IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF NEBRASKA

IAN V. JACOBS,

                Plaintiff,

       v.

FAREPORTAL INC.,

                Defendant.

Civil Action No. 8:17-cv-00362

## DEFENDANT FAREPORTAL INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Fareportal Inc. ("Fareportal") respectfully submits this memorandum of law in opposition to plaintiff Ian V. Jacobs' ("Plaintiff") motion to compel dated September 28, 2018 ("Motion" or "Mot."). Jacobs' Motion seeks to compel the production of documents in response to Requests 74-75 in Plaintiff's Third Set of Requests for the Production of Documents (the "Requests").

## INTRODUCTION

Plaintiff's vicious, out-of-context rhetoric is a tell as to why this Court should deny the motion to compel. To date, Plaintiff has served four sets of document requests (totaling 80 demands) and has already asked for deposition dates for at least four witnesses, with the claim that more are required. In a case involving a trademark that Plaintiff scarcely, if ever used, and never enforced until now, and where the damages in this case are – at best for the Plaintiff – in the four figures, Plaintiff has to characterize Fareportal as engaging in an "obstructionist litigation strategy" (Mot. at 1) so that this Court might be distracted enough to give Plaintiff the irrelevant, disproportionate information it seeks.

There is no sound basis in law or fact to maintain this case, much less justify a disproportionate demand for six years of 100% of Fareportal's revenue and profit data that bear no reasonable relationship to the claimed violations. Indeed, Plaintiff's scorched-earth tactics – as to which he has no intention to reciprocate – compel this case to be addressed on the merits first before any documentation pertaining to damages is turned over. Plaintiff's claim that he "cannot complete the [expert] analysis and calculation" of his damages without the requested information and that the "agreed deadline of November 15 for Plaintiff's expert report" is fast approaching (Mot. at 2) is a red herring. The Court clearly stated during its telephone conference with the parties' counsel that it would consider granting an extension of the expert report deadline should it be necessary. While Plaintiff's objections ignore the Court's request that the parties address the possibility of staging the case, Plaintiff's "time crunch" is similarly insufficient to warrant granting an otherwise meritless discovery request. Indeed, based on the weakness of Plaintiff's claims and the fact that Plaintiff appears to have just one expert, for damages, the whole issue and costs for testifying and rebuttal experts could be avoided through bifurcation.

The truth is that Fareportal has been very compliant, working out issues with opposing counsel pertaining to confusing drafting and overbreadth, as well as the fact that certain files have had technological challenges in restoration. However, despite boasting about his full document production of fewer than 700 pages, which is disorganized and quite incomplete, Plaintiff points fingers at Fareportal while it has been in the process of producing documents following review by attorneys who had to be hired for the task following Fareportal's resolution of the issues – despite that Fareportal could have objected wholesale. As a result of this expedited work, at significant cost, Fareportal has produced nearly 5,300 pages of documents as

of October 2, 2018 and is poised to produce thousands more pages in the coming days. Declaration of Scott J. Sholder dated October 5, 2018 ("Sholder Decl."), ¶ 3.[1]

Not satisfied, and without even articulating his damages theory, Plaintiff is now demanding more, implying that it is no burden to turn over highly sensitive information to an individual whose claims are grounded in squatting on a website called www.cheapo.com while he sat back and watched Fareportal develop and built its CHEAPOAIR® brand during a course of well over a decade.  Plaintiff disingenuously refers to extensive, competitively sensitive, and highly confidential financial information as a "small number of basic financial documents." Mot. at 1.  Plaintiff has no factual basis for this conclusory statement, let alone personal knowledge of the nature of Fareportal's financial documents, particularly the most sensitive ones. Yet, notwithstanding Plaintiff's mischaracterization of the requested materials, documentation of 100% of Fareportal's profits is, in fact, irrelevant, and is in no way "critical to Plaintiff's damages."  Mot. at 2.  For the reasons discussed below, Plaintiff bears the burden of establishing a causal nexus between Fareportal's profits and the alleged infringements and is not entitled to carte blanche access to Fareportal's financial information just to put the onus back on Fareportal to carve out every dime unrelated to the purported infringement. This is not the process the Lanham Act or relevant case law contemplates, including cases relied upon heavily by Plaintiff in his Motion.  Plaintiff is entitled to sales information that is causally related to the purported infringements (from which Fareportal can prove deductions), and Fareportal has offered to provide such information.

---

[1] Plaintiff was well aware at the time of drafting the Motion that Fareportal was in the process of collecting and searching the records of dozens of custodians and reviewing tens of thousands of documents to ensure a complete and robust production; indeed, counsel for Fareportal explained this process during a lengthy August 31, 2018 meet and confer with Plaintiff's counsel. *Id.* at ¶ 2.

**MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION TO COMPEL**                                          Page **3** of **24**

## FACTUAL BACKGROUND

Additional factual background concerning Fareportal and its business model, along with a brief overview of the context of the case, will illuminate the context in which Plaintiff brings this Motion and why his request is so disproportionate.

Fareportal is a technology company that develops computer software used to power travel-related websites. *See* Dkt. No. 54 at 14 ¶ 1. One such website, www.cheapoair.com, is home to the highly successful, multinational, Internet-based travel agency CheapOair. *See id.* ¶¶ 1-2, 7. Through www.cheapoair.com, Fareportal sells approximately $4 billion in global airline ticket sales each year. *Id.* ¶ 1. Fareportal earns revenue on these sales.

Fareportal's federally registered, incontestable trademark CHEAPOAIR® (U.S. Reg. No. 3,576,166; the "CHEAPOAIR Mark") serves as CheapOair's business name and has been in use since July 1, 2005.[2] To promote the travel-related services offered through www.cheapoair.com, Fareportal advertises its website in several ways, including through the purchase of thousands of keyword search terms comprised of the CHEAPOAIR Mark or variations thereof, to help redirect customers who are searching for travel services generally, or who are searching for CheapOair but may not get the name exactly right. *See id.* ¶ 8. A search for any one of Fareportal's thousands of purchased keyword search terms (through, for instance, the Google search engine) produces a sponsored link on the search results page that redirects Internet users to Fareportal's www.cheapoair.com website. *See id.* Fareportal's use of these keyword search terms allows users searching for Fareportal's travel services to easily locate Fareportal's website. *See id.*

---

[2] U.S. Reg. No. 3,576,166 has achieved incontestable status on the United States Patent and Trademark Office Principal Register.

Fareportal, like most internet-based businesses, routinely bids on ads that are responsive to thousands of keyword search terms, including terms that relate to their brand; among other things, this allows their ads to appear before users who are looking for cheapoair.com.  One such term Fareportal purchases is "cheapo," the first half of Fareportal's CHEAPOAIR Mark and business name of its online travel agency.  *See* Dkt. No. 49 at 7 (noting Fareportal's use of over 3,000 keyword search terms in 2012).  Notably, the CHEAPOAIR Mark is not at issue in this case; Plaintiff does not challenge the CHEAPOAIR Mark; he does not seek to invalidate it in any way; and he does not claim that Fareportal's use of the CHEAPOAIR Mark in advertisements, keyword bidding, or otherwise, is infringing.  Nor could he, considering that his claims are time-barred:  he admits that he was aware of Fareportal's CHEAPOAIR Mark by 2008, if not before, and Fareportal has used other CHEAPO-formative marks, such as CHEAPOSTAY®, for several years as well.  All that is relevant is the term "cheapo," and Fareportal can track the amount of revenue earned through computer searches for that term.

Fareportal also advertises its website through advertising campaigns that are broadcast on satellite radio, cable television, and/or posted to YouTube. One such campaign was the short-lived and relatively unsuccessful "We Go Cheapo" campaign at issue in this litigation.  *See* Dkt. No. 1 at 5, ¶ 19. That campaign ran from April 2016 to October 2017 on television and on YouTube. Even though it was not Fareportal's only ad campaign at that time, Fareportal is able to track redemption of coupon codes specific to the "We Go Cheapo" campaign.

In sum, the relationship between Fareportal's advertising efforts and revenue earned through the website www.cheapoair.com may be represented as follows:

**Keyword Search Terms**
- Thousands of terms purchased during the previous 5 years alone
- "Cheapo" is one such term

+

**Advertising Campaigns**
- Multiple campaigns utilized during the previous 5 years
- "We Go Cheapo" is one such campaign

User encouraged to visit www.cheapoair.com

**Revenue**

Revenue is earned through commissions on a customer's purchase of:
- Airline tickets
- Car rental reservations
- Hotel reservations
- Vacation packages

Despite the fact that only one keyword search term (of many thousands) and one advertising campaign are at issue in this litigation, Plaintiff's Requests seek financial information concerning 100% of the profits earned from the "Revenue" categories set forth above, earned from all Fareportal customers, over the course of more than six years. This extensive amount of information would include data concerning profits earned from those consumers who visited, discovered CheapOair through means other than keyword search results and ad campaigns, or were redirected to www.cheapoair.com by way of keyword search terms other than "cheapo" and advertising campaigns other than the "We Go Cheapo" campaign. Indeed, the sales earned from the keyword search term "cheapo" (without respect to the term "air") and the "We Go Cheapo" ad campaign represent a tiny fraction of the overall information to which Plaintiff wrongly believes he is entitled.

Meanwhile, as explained below, Plaintiff's claims are likely to fail on the merits for several reasons. Plaintiff traces his claimed rights to a website, located at www.cheapo.com. For many years, this website was a landing page for advertising; if someone happened to land on the website and click one of the advertisements, the visitor would be redirected to a third-party

website (such as an online store), and Plaintiff would receive a small amount of money for the referral.  As Fareportal alleges, at some point in time, subsequent to Fareportal's adoption of its CHEAPOAIR trademark over 10 years ago, Plaintiff began offering what appeared to be a search widget for air travel but was in fact simply another advertisement that would refer the visitor to another travel site, and in turn Plaintiff would receive affiliate revenue.  The discovery produced to-date shows that Plaintiff became an affiliate with several competitors of Fareportal, but not Fareportal itself.  This is the extent of Plaintiff's use and the basis for Plaintiff's claims that Fareportal violated Plaintiff's alleged trademark rights.  On this basis, Plaintiff challenges Fareportal's use of the dominant part of Fareportal's own longstanding, incontestable name as a slogan for a CHEAPOAIR ad and as one of thousands of keywords.  This is the basis for Plaintiff's claim Fareportal owes Plaintiff a windfall for injuries – despite admitting that he has no evidence that any person was ever confused in over 10 years, and despite admitting that he never enforced his rights until he filed an opposition to one of Fareportal's trademark applications (for "I GO CHEAPO"), followed by a preliminary injunction motion (which he since dropped) last year.

Against this backdrop, and for the reasons set forth below, the Court should not grant Plaintiff permission to embark on a fishing expedition that is patently disproportionate to the needs of the case and belied by relevant legal authorities.

## ARGUMENT

**I.    THE COURT SHOULD STAGE DISCOVERY, WITH THE FIRST STAGE FOCUSED SOLELY ON THE MERITS OF PLAINTIFF'S CLAIMS[3]**

Plaintiff has disregarded the Court's request to address the possibility of staging discovery and has chosen not to brief the issue – including addressing any purported likelihood of success on his underlying claims – but Fareportal will do so here.  Plaintiff is unlikely to prevail on liability for the reasons stated below, and because the issue of damages is therefore likely to be irrelevant, bifurcation of damages discovery furthers the purposes of judicial economy, ensuring that judicial and party time and resources are expended only if necessary.

### A.  Legal Standards for Staging Discovery

Federal Rule of Civil Procedure 42(b) permits a district court to bifurcate any claim or issue in "furtherance of convenience . . . or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  District courts possess "broad discretion" to bifurcate issues for purposes of trial, *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1201-02 (8th Cir. 1990), and many courts "have stayed discovery on the damages issues until the trial on liability is decided in the interests of saving both the court's and the parties' time and expense."  *Foseco, Inc. v. Consol. Aluminum Corp.,* 851 F. Supp. 369, 371 (E.D. Mo. 1991).  "Since the reasoning for the separate trials involves the possible avoidance of a costly and complicated trial on damages, it is logical to delay inquiry into or discovery of those issues until there is a reasonable certainty that

---

[3] Plaintiff asserts a hodgepodge of claims, but they all arise from the same facts:  Plaintiff claims to be injured by Fareportal's use of "cheapo" in an advertising campaign that featured the slogan "We Go CheapO," and from purchasing as keywords "cheapo" and "cheapo.com," which are reasonably related to Fareportal's longstanding brand CHEAPOAIR.  Further, the same or similar analyses are conducted under the various legal provisions that Plaintiff raises (*see infra* at pp. 9-15), and for that reason, Fareportal focuses here on Plaintiff's lead claims in discussing the merits.  *See Mut of Omaha Ins. Co. v. Novak*, 648 F. Supp. 905, 909 (D. Neb. 1986), *aff'd*, 836 F.2d 397 (8th Cir. 1987) (solely applying the factors relevant to an inquiry under federal law after opining that, in considering federal trademark claims and claims under Nebraska state law, "for the purposes of this case, the elements of all of these various infringement claims are the same").

they will be necessary." *Id.  See also Swofford v. B & W, Inc.,* 34 F.R.D. 15, 20, *aff'd,* 336 F.2d 406 (5th Cir. 1964); *Eaton Corp. v. Auburn Gear, Inc.*, 8 U.S.P.Q.2d 1371, 1375, 1988 WL 273448, at *3 (N.D. Ind. 1988) (since the liability issues may be dispositive, the court limits discovery to those issues initially).

While bifurcation may be inappropriate where it would result in unnecessary delay or additional expense, *see Ameritas Life Ins. Corp. v. Fed. Ins. Co.,* No. 16 Civ. 3006, 2017 WL 432693, at *2 (D. Neb. Jan. 31, 2017), here, staging of liability and damages discovery (and dispositive motions or trials) could save the parties and the Court the significant time and expense of engaging in complex damages discovery – both fact and expert[4] – in light of the serious weaknesses in Plaintiff's legal claims.[5]

### B.  Plaintiff Is Unlikely to Succeed on the Merits of His Claims, and Therefore Damages Discovery Will Result in an Unnecessary Use of Time and Resources

The significant shortcomings in Plaintiff's claims include the following, each of which could obviate the need for damages discovery, including the Requests, as well as expert discovery.

#### 1.    Plaintiff Cannot Show a Likelihood of Confusion.

In determining whether a likelihood of confusion exists, courts in the Eighth Circuit consider the following six factors: (1) the strength of the trademark; (2) the similarity between the mark at issue and the alleged infringer's mark; (3) the degree to which the products compete

---

[4] As discussed *supra*, Plaintiff's concerns regarding completion of his expert report are unfounded. Indeed, staging of discovery – and a subsequent ruling on the merits – may very well obviate the need for Plaintiff's expert entirely, not to mention save Fareportal the cost of having to rebut Plaintiff's expert and potentially spend a significant amount of money hiring a business valuation expert to examine Plaintiff's business and the extent of his purported damages.

[5] Additionally, in light of the fact that the financial discovery Plaintiff seeks is highly commercially sensitive, bifurcation serves to ensure that Fareportal is not unduly prejudiced by being unnecessarily compelled to produce sensitive information to an expert who Plaintiff has retained but not identified.

with each other; (4) the alleged infringer's intent in using the mark; (5) incidents of actual confusion; and (6) the type of product, its costs, and conditions of purchase. *Lovely Skin, Inc. v. Ishtar Skin Care Prod., LLC*, 745 F.3d 877, 887-89 (8th Cir. 2014) (citing *SquirtCo v. Seven–Up Company*, 628 F.2d 1086, 1091 (8th Cir. 1980)).

In this case, however, Plaintiff alleges that Fareportal's continued use of his trademark will cause reverse confusion, which occurs when "a large junior user [] saturates the market with a trademark similar or identical to that of a smaller, senior user []*." Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965, 973 (D. Minn. 2017) (citing *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1246 (8th Cir. 1994)). While courts in this Circuit use the same *SquirtCo* factors for both forward and reverse confusion cases, the first three factors – the strength of the trademark, the similarity between the mark at issue and the alleged infringer's mark, and the degree to which the products compete with each other – are considered pivotal in reverse confusion cases. *Eyebobs*, 259 F. Supp. at 973 (internal citations omitted).

It is not clear that this is indeed a reverse confusion case. Plaintiff's trademark registration for CHEAPO identifies 2007 as his date of first use in commerce (*see* Dkt. No. 54 at 17 ¶ 11); Fareportal started using CHEAPOAIR in 2005 (*see id.* at 15 ¶ 6), making Fareportal the senior user under the Lanham Act.[6] But even if Plaintiff has properly framed the case, the factors relevant to reverse confusion, and others under the *SquirtCo* analysis, favor Fareportal, and if there were any doubt, Fareportal's strong defenses demonstrate a likelihood that Plaintiff's claims will fail entirely.

---

[6] Fareportal applied for its now-registered mark for CHEAPOSTAY in 2009, and for the mark CHEAPOBOT in 2016. Plaintiff never asserted any claims against either.

**MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION TO COMPEL**

### a.  Plaintiff's mark – if a domain name can even constitute a mark – is not strong.

When evaluating the first factor, strength of the mark, courts consider both the mark's conceptual and commercial strength.  *Lovely Skin*, 745 F.3d at 888.  "Cheapo" by itself connotes something inexpensive; it is only through Fareportal's investment in its CHEAPOAIR marks that the term "cheapo" has any distinctiveness in the travel space.  As for commercial strength, "the relevant inquiry is public recognition, which can be demonstrated by consumer surveys or testimony, advertising expenditures, sales volume, and newspaper and magazine articles." *Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC*, No. 14 Civ. 846 (SRN) (BRT), 2015 WL 5602805, at *8 (D. Minn. Sept. 23, 2015) (considering evidence of "significant advertising expenditures," and an "average annual investment of approximately $375,000 per law firm" to be indicative of commercial strength).  A strong trademark is entitled to greater protection than a weak one.  *Frosty Treats, Inc.*, 426 F.3d at 1008.  *Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005).

Here, Plaintiff can hardly allege substantial investment or sales, when the limited discovery already conducted has shown that Plaintiff essentially abandoned the mark due to non-use, never invested in it, and never enforced it.

### b.  The parties' marks are not confusingly similar and do not compete.

While both of the marks at issue here include the word "cheapo," Fareportal's CHEAPOAIR Mark is distinguishable given the suffix "air" and the stylized capital "O" at the end of "cheapo."  Further, as discussed in Fareportal's counterclaims, the parties' products do not actually compete.  Fareportal has expended extensive time and money over the course of many years building and protecting its "CHEAPOAIR" brand and ensuring that the online travel booking services it offers are of the highest quality and are correctly associated with Fareportal

and CheapOair.  *See* Dkt. No. 54 at 14-15 ¶¶ 2-8.  Plaintiff, on the other hand, offers no goods or services; rather, he offers a bare-bones one-page (or three pages if you count the lightweight "terms of service" and "privacy policy" pages) pass-through site that routes users to third-party sites offering the goods and services of others, and until more recent years, had not even included travel services.  *See id.* at 16 ¶ 9; 17-19 ¶¶ 13-16.  Posing as a legitimate competitor, Plaintiff audaciously attempts to wield his hardly-used and hardly-enforced trademark as a weapon against Fareportal's legitimate marketing and advertising efforts to promote and advance its own brand while he sits back and receives minimal passive income from the hard work of others. This is not what the Lanham Act contemplated in offering protection to brand owners.

### c. Despite roughly 15 years of concurrent use, there is no evidence of actual confusion.

The fifth *SquirtCo* factor examines incidents of actual confusion.  *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999) (lack of actual confusion supported finding that there was no likelihood of confusion between products).   Plaintiff's mark is so weak, that it would be impossible for there to be confusion – likely or actual – between the two marks, and Plaintiff has failed to identify a single instance of actual confusion despite the fact that both parties' marks have been in use for roughly 15 years.  This alone shows that if confusion has not occurred in well over a decade, the "likelihood of confusion" is essentially non-existent.

### 2.    Plaintiff's Untimely Lanham Act Claims Are Barred by Laches.

The equitable defense of laches "applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999) (trademark owner's failure to assert its rights, and defendant's subsequent investment in its use of its own mark, likely necessitated application of laches).  *See also Landers, Frary & Clark v.*

*Universal Cooler Corp.*, 85 F.2d 46, 49 (2d Cir. 1936) ("[T]he defendant spent large sums in

reliance upon its apparent immunity . . . Moreover, the estoppel need not depend upon

expenditure alone. When for eight years one plans one's business on the assumption that one

may use a mark, it is a grave dislocation of the business to stop its use . . ."); *Sturgis Motorcycle*

*Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 239 F. Supp. 3d 1128, 1161 (D.S.D. 2017) (holding

that defendants' equitable defense of laches was a meritorious defense to trademark claims

because of inexcusable delay and the substantial investment made by defendants in their

business).

Plaintiff has known about Fareportal's CHEAPOAIR Mark since July of 2008, if not

earlier, but it was only in 2017 when Plaintiff chose to enforce his alleged rights against

Fareportal.  *See* Sholder Decl., ¶ 5, Ex. A at 5 (Interrogatory No. 14); ¶ 6, Ex. B.  This extended

delay is impermissible; Plaintiff should not be allowed to pursue a claim after sitting on his rights

for nearly a decade while Fareportal built a successful multinational brand.  *Hubbard Feeds*, 182

F.3d at 602 (finding prejudice based on defendant's "substantial investment in equipment").

      3.     <u>Plaintiff Has Not Made Consistent Use of His Claimed Trademark.</u>

Rights in a trademark are acquired and maintained through use. *See United Drug Co. v.*

*Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ("The law of trademarks is but a part of the

broader law of unfair competition; the right to a particular mark grows out of its use, not its mere

adoption"); 15 U.S.C. § 1127 (under the Lanham Act, a mark may be deemed "abandoned" due

to non-use); *Imperial Tobacco Ltd., Assignee of Imperial Grp. PLC v. Philip Morris, Inc.*, 899

F.2d 1575, 1583 (Fed. Cir. 1990) (concluding that registered mark for cigarettes was abandoned

through non-use, and that registrant failed to justify its non-use of the registered mark).  Plaintiff

cannot demonstrate "use" of the CHEAPO Mark during the relevant time period, and his

registration of the domain name www.cheapo.com is not, by itself, a "commercial use" or

"trademark use." The Trademark Manual of Examination Procedure states, in pertinent part:

> When a mark appears in the computer browser area as part of the URL, Internet address, or domain name of the website that houses the web page, consumers generally do not recognize this as trademark use. Instead, this use merely identifies the Internet location of the website where business is conducted and goods or services are offered.

T.M.E.P. Section 904.03(i)(B)(2).  *See, e.g.*, *In re Roberts*, 87 USPQ2d 1474, 1479-80

(TTAB 2008); *In re Supply Guys, Inc.*, 86 USPQ2d 1488, 1493 (TTAB 2008)

("Obviously, a website can be used for multiple purposes and the simple fact that a term

is used as part of the internet address does not mean that it is a trademark for the goods

sold on the website."); *In re Eilberg*, 49 USPQ2d 1955, 1956 (TTAB 1998).

███████████████████████████████████████

████████████████████████     ███████████

███████████████████████████████████████

██████████████████████

    4.    <u>Plaintiff Has Abandoned His Trademark by Failing to Enforce His Rights.</u>

Even if Plaintiff's failure to use the CHEAPO mark does not rise to the level of non-use –

which Fareportal does not concede – Plaintiff's failure to enforce his rights in the trademark

constitutes abandonment on its own.  *See Uncas Mfg. Co. v. Clark & Coombs Co.*, 309 F.2d 818,

820 (1st Cir. 1962) (considering trademark owner's failure to protest the use of his trademark in

dismissing trademark infringement claim due to abandonment through non-use).  *See also Ideal*

*Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1028 (7th Cir. 1979) (holding that defendant

could not be enjoined from using trademark where trademark owner failed to enforce rights

against third parties).

As noted above, Plaintiff admits that he has known of Fareportal and Fareportal's CHEAPOAIR Mark since July of 2008, but never enforced his trademark rights until last year. *See* Sholder Decl., ¶ 5, Ex. A at 5 (Interrogatory No. 14); ¶ 6, Ex. B. Plaintiff has further admitted that, aside from his communications sent to Fareportal related to this litigation, he has never sent a single cease and desist letter, demand letter, or other notice of trademark infringement to a third party based on allegations of infringement of Plaintiff's asserted trademark rights. *Id.*, Ex. A at 4-5 (Interrogatory No. 12). This extended inaction is sufficient to constitute abandonment.

5. <u>All Courts to Weigh in on the Issue Have Held That Bidding on Or Purchasing a Trademark as a Keyword Is Not Tantamount to Trademark Infringement Where the Purportedly Infringed Mark Does Not Appear in the Resulting Advertisement.</u>

Finally, it is worth noting that Plaintiff's arguments related to keyword bidding and purchasing are weak at best, as no court has ever held that competitive keyword advertising is, by itself, infringing. *See, e.g.*, *1–800 Contacts, Inc. v. Lens.com, Inc.*, 755 F.Supp.2d 1151, 1174 (D. Utah 2010), *aff'd in part*, *rev'd in part on other grounds*, 722 F.3d 1229 (10th Cir. 2013), *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10 Civ. 1398, 2013 WL 1900562, at *10 (D. Colo. May 7, 2013), *aff'd*, 627 Fed. Appx. 682 (10th Cir. 2015); *Hearts on Fire Co., LLC v. Blue Nile, Inc.*, 603 F.Supp.2d 274, 285 (D. Mass. 2009).

Moreover, a trademark owner cannot prevail on such a claim unless he can show "additional behavior that confuses customers," in addition to the purchase of a competitor's marks. *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) (citing *1–800 Contacts, Inc.*, 755 F. Supp. 2d at 1174)). As discussed above, because Plaintiff cannot show a likelihood of confusion and

Fareportal understandably has not made other efforts to associate its services with a website designed to bounce web traffic to legitimate online travel sites, Plaintiff's claim will fail.

## II. ABSENT STAGING, THE COURT SHOULD DENY PLAINTIFF'S MOTON BECAUSE HIS REQUESTS ARE IRRELEVANT AND DISPROPORTIONATE UNDER THE FEDERAL RULES, APPLICABLE CASE LAW, AND PLAINTIFF'S OWN CITED AUTHORITY

Plaintiff's Requests improperly ask for information regarding 100% of Fareportal's profits over a span of many years without regard to causation or relevance to the infringements alleged in his Complaint.  Plaintiff is not entitled to this information because almost none of it will bear any reasonable relationship to the "We Go Cheapo" ad campaign or the keyword "cheapo."[7]  Plaintiff ignores relevant case law, and his cited cases do not win the day for him, particularly with respect to his misguided reliance on a distinguishable Seventh Circuit decision. Thus, to the extent the Court declines to stage discovery, the Court should deny Plaintiff's motion to compel production of documents or information responsive to the Requests, sustain Fareportal's objections, and require Plaintiff to propound narrower requests.

### A. An Award of Defendant's Profits Under the Lanham Act Requires a Nexus Between Profits and the Alleged Infringement

While it is true that the Lanham Act provides that a plaintiff need only prove sales, with the defendant providing evidence of deductions, 15 U.S.C. § 1117(a), Plaintiff uses this rule to place the proverbial cart before the horse.  *See* Mot. at 4-5.  The sales which Plaintiff must prove – and for which Fareportal is potentially obligated to provide discovery – must be related to the infringement at issue in this case, even with respect to damage awards based on Fareportal's profits (as opposed to Plaintiff's purported actual damages).  Plaintiff has not met his burden of

---

[7] While the scope of this case is inherently limited to Fareportal's U.S.-based commercial activity, Plaintiff is essentially seeking information regarding global sales, making the scope of his demands even more onerous given Fareportal's international trademarks (including a registration for the term "CHEAPO" in Canada (Reg. No. TMA820595)).

showing that the volume of damages information he seeks has any chance of leading to admissible evidence.

Under the Lanham Act, a "successful trademark holder is entitled to the following damages *caused by infringement*: '(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.' 15 U.S.C. § 1117(a)." *Martinizing Int'l LLC v. BC Cleaners, LLC*, No. 15 Civ. 551 (MJD) (BRT), 2015 WL 8483280, at *3 (D. Minn. Dec. 9, 2015), *aff'd in part, rev'd in part*, 855 F.3d 847 (8th Cir. 2017) (emphasis added).  It is Plaintiff's burden to provide "evidence of a causal connection between [Fareportal's] profits and [any] alleged trademark infringement."  *Rainbow Play Sys., Inc. v. GroundScape Techs., LLC.*, 364 F. Supp. 2d 1026, 1036 (D. Minn. 2005).

There is no precedent for awarding profits-based damages for transactions or other activities that had nothing to do with the alleged infringement.  This Court has even denied similar requests.  *See, e.g.*, *Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc.*, No. 10 Civ. 365, 2011 WL 5075720, at *7 (D. Neb. Oct. 25, 2011) ("Request for Production No. 16, served on the corporate defendants, and No. 10, served on Friedman and West, seek their respective tax returns from 2008–11. The court does not see how this information is relevant. The plaintiff has not indicated how this information may lead to the discovery of additional potential misuses of the Service Mark or to potential proof of any damages the plaintiff has suffered. The motion to compel is denied with respect to those requests.").

The cases upon which Plaintiff relies are not to the contrary.  Fareportal does not dispute that, as stated in *Safco Prod. Co. v. Welcom Prod., Inc.*, 799 F. Supp. 2d 967, 995 (D. Minn. 2011), actual damages and profits are distinct categories of damages.  But *Safco* does not say that profit awards need not be attributable to the infringement, and Plaintiff cites no case that stands

for this proposition because it would be incorrect as a matter of law.[8]  *See, e.g.*, Mot. at 5 (citing *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989) (holding that profits must be "attributable to [the] infringing use under the Lanham Act.")).  Further, *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F3d 1035 (8th Cir. 1999), does not stand for the proposition that a causal link is *not* required when a Lanham Act plaintiff seeks profits; per Plaintiff's own citation to that case, *Blue Dane* only addressed actual damages (in the context of false advertising), and not profits.  *Id.* at 1042.

Plaintiff covers for this deficiency by proposing that every sale Fareportal made over the course of more than six years under its longstanding CHEAPOAIR® house mark is related to the "cheapo" trademark, and that he is therefore entitled to information regarding Fareportal's overall profits as a result.  *See* Mot. at 10.  But this is not what the law provides, *see supra*, and it will certainly not be borne out by discovery.  Allowing Plaintiff to pursue this misguided theory would countenance the pursuit of purely speculative damages, which according to the very case on which Plaintiff so heavily relies, the Lanham Act does not permit.  *See Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 963 (7th Cir. 1992) (reversing award of profits "bear[ing] no relationship to [defendant's unjust] enrichment").  To allow Plaintiff to obtain discovery concerning profits originating from all sources other than use of the word "cheapo" would be an unprecedented windfall.

Plaintiff – who purports to be in competition with Fareportal – should not be permitted to use this lawsuit as an excuse to embark on a fishing expedition for highly sensitive information

---

[8] *Safco* clarifies that, while a plaintiff must be able to substantiate a claim for actual damages, such proof of actual harm is unnecessary with respect to an award of defendant's profits.  The case does not indicate that a plaintiff is entitled to damages unrelated to a defendant's alleged infringement; instead, the case confirms that, with respect to an award of profits, no proof of actual financial loss is required.  *Safco*, 799 F. Supp. 2d at 994.

**MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION TO COMPEL**

about his competition such as Fareportal's overall companywide profits spanning many years.[9] This is particularly true where, as here, Fareportal has indicated that it is ready and willing to produce documentation specific to the "We Go Cheapo" ad campaign and the "cheapo" keyword, and which presumably would be more helpful to an expert who seeks to prepare a report suitable for admission into evidence.

Similarly, Plaintiff's argument that the Court can award a small percentage of profits falls wide of the mark.  There is no question that, assuming Plaintiff prevails on showing a sale attributable to the advertising campaign or use of "cheapo" as a keyword, he would not be entitled to 100% of the profits for that sale – particularly not when the advertising campaign also prominently used Fareportal's CHEAPOAIR mark as the identifier of the source of the advertisement.[10]

Indeed, this is what *Quaker Oats*, a Seventh Circuit case on which Plaintiff heavily relies, explains.  978 F.2d at 963.  It does not stand for the proposition that a reasonable royalty of company-wide profits is a measure of damages.  Rather, the Seventh Circuit suggested that a reasonable royalty rate, in that case, "would more accurately reflect both the extent of [defendant's] unjust enrichment and the interest of [plaintiff] that has been infringed." *Id.* Further, the Court did not hold that a reasonable royalty rate is always the correct measure of damages.  Instead, the Court held that the district court's initial damages award – which reflected 10% of Gatorade's profits during the time period in which Gatorade infringed the plaintiff's trademark – was exorbitant.  *Id.* ("[W]e can conceive of no rational measure of damages that

---

[9] Fareportal is not seeking to withhold documents solely on grounds of confidentiality, which is merely one of the objections Fareportal has asserted against producing data reflecting 100% of its gross profits.

[10] Plaintiff improperly attempts to muddy the discovery waters by conflating Fareportal's purportedly infringing use of the word "cheapo" in the "We Go Cheapo" ad campaign and "cheapo" keyword bidding with Fareportal's ubiquitous use of its registered CHEAPOAIR Mark and business name in connection with its online travel agency CheapOair.  *See* Mot. at 8.  The use and validity of the CHEAPOAIR Mark is not at issue in this case and should have no bearing on the scope of discovery.

**MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION TO COMPEL**                    Page **19** of **24**

would yield [the amount awarded].").  Accordingly, the Court suggested that a reasonable

royalty rate would more accurately reflect the extent to which the plaintiff had been harmed by

Gatorade's infringing actions.[11]

Finally, Plaintiff's claim that he is entirely unable to offer any indication of the extent of

his damages is disingenuous.  Plaintiff is well aware that he earned only $7,487.42 in affiliate

advertising revenue in connection with his website www.cheapo.com during the time period

September 2017 – September 2018.  *See* Sholder Decl., ¶ 8, Exs. D – E.  But monetary recovery

must bear some relationship to the Plaintiff's injury.  Plaintiff believes he is entitled to

Fareportal's profit information because he believes that he is entitled to a portion of those profits,

but Plaintiff fails to even attempt to justify how he may be entitled to even a modest fraction of

four billion dollars when he has earned only 0.00018% of this amount over the entirety of the

past calendar year.  The enormous discrepancy between the actual damages that Plaintiff may be

entitled to and the profit-related information that is the subject of Plaintiff's Motion underscores

the clear lack of proportionality of the Requests.

**B. Plaintiff's Requests are Disproportionate to the Needs of This Case Because Any
Profits-Based Damages Related to the Alleged Infringements Reflect Only a Small
Fraction of Fareportal's Overall Profits**

Plaintiff's entire case relates to one ad campaign that lasted for 18 months and which ran

along with many other ad campaigns, and the purchase of keywords representing a tiny fraction

of keywords purchased by Fareportal.  Accordingly, his claims are only relevant to what amounts

---

[11] Plaintiff misrepresents the scope and basis of the initial damages award in *Quaker Oats*. While the
district court originally awarded a percentage of all of Gatorade's profits during the period of
infringement, this was because all of Gatorade's profits were, in the court's view, attributable to
Gatorade's infringement.  *See Quaker Oats,* 978 F.2d at 963.  Plaintiff would similarly have this Court
assess damages (to the extent he is entitled to damages) by applying a reasonable royalty rate to
Fareportal's overall profits, but this assumes that *all* of Fareportal's profits are in some way attributable to
its use of two keyword search terms, and its dissemination of a single advertising campaign.

<u>MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO COMPEL</u>                              Page **20** of 24

to a *de minimis* portion of Fareportal's overall profits, and his overbroad and invasive Requests are improper.

*First*, Plaintiff's arguments based on the test set forth in Federal Rule 26(b)(1) are unpersuasive.  Specifically:

- Plaintiff's claim that discovery of 100% of Fareportal's profits over the course of more than six years is "essential" to his claims and damages is erroneous given that Plaintiff must show Fareportal's sales related to the infringement.  *See supra.*  Further, as discussed above, the "essential" nature of this information is irrelevant if the Court decides to stage discovery.

- The theoretical amount in controversy as stated by Plaintiff (Mot. at 7) is misleading because Plaintiff continues to ignore the need for a causal connection between damages and purported infringement.  That Fareportal "generates approximately $4 billion in global airline ticket sales each year," (Mot. at 7), is irrelevant; almost all of those sales will be completely unrelated to the alleged infringement, which means that Plaintiff's damages, if any, will not be "significant."  (*Id.*).

- While Plaintiff does not have access to Fareportal's financial information, he clearly has a sense of Fareportal's annual ticket sales and could have more narrowly defined the scope of his Requests to seek documentation of the ticket sales that were related to the ad campaign and keyword purchases at issue here.

- Notwithstanding Plaintiff's assumptions concerning Fareportal's file storage and organization, as discussed *supra*, Fareportal is not objecting to the Requests on the basis of burden (*see* McClung Aff. Exh. A-2 at 43-45), so this factor is irrelevant.

- The importance of the discovery weighs in favor of Fareportal for the reasons stated above.

- With respect to the weighing of burden and benefit, Plaintiff again makes various assumptions with no factual basis or personal knowledge, including again with respect to a non-existent objection based on burden.  Fareportal is arguing that the information is irrelevant to any claim or plausible theory of damages, that the request is overbroad and invasive, and that the relevant case law does not support its production.  Moreover, the benefit of the discovery is minimal given Plaintiff's failure to acknowledge the need for a causal nexus between profits and infringement.

- Further, contrary to what Plaintiff alleges, producing in response to Plaintiff's overbroad request would be too disproportionate, particularly when documents exist that are more closely tied to the campaign – thereby avoiding the production of highly sensitive information that would shed light on an entire business. *See* Sholder Decl., ¶¶ 9-10.

*Second*, Plaintiff continues to evade a major issue related to proportionality raised by the Court during the parties' conference call: the extent to which Plaintiff has actually been harmed by Fareportal's alleged actions.  To dodge this query, Plaintiff conflates actual damages with profits, insisting that he "cannot calculate the exact amount in controversy until he obtains the discovery that is the subject of this Motion." Mot. at 6.  However, the subject of Plaintiff's Motion is Fareportal's profits, and not Plaintiff's damages.  This "discovery that is the subject of this Motion" is therefore irrelevant and disproportionate to a calculation of what, if anything, Plaintiff himself has lost.  The Court should not credit Plaintiff's mixing of damages concepts

when it suits his interests and his disregard for common concepts (such as the requisite causal nexus) that undermine his Requests.[12]

*** 

Plaintiff is not entitled to the overbroad, irrelevant, intrusive, and harassing discovery he seeks. To grant Plaintiff's Motion would incentivize plaintiffs to file lawsuits with questionable merit against their purported competitors in order to gain access to sensitive and highly confidential business information and would encourage the sharp practices employed by Plaintiff and his counsel to obtain this valuable information at any cost.[13]

---

[12] Plaintiff's posturing (at 8-9) is unfounded. While it is surprising that Plaintiff's counsel would suggest such a thing, Fareportal has no intention of violating the Court's rules on disclosure, discovery, candor, and honesty. Plaintiff's counsel should be ashamed for their incivility and disparagement toward officers of the Court. If there is cause for concern, it is demonstrated in the misrepresentation of an important exchange that occurred during the parties' August 31, 2018 meet and confer. Taking a cue from the Court, Fareportal will not address this issue but reserves the right to raise it if such misrepresentations from counsel continue.

[13] Even if the Court were to grant Plaintiff's motion, there is no basis for an award of attorney's fees against Fareportal. While Plaintiff cites to no authority in support of his specious request, presumably he is relying on Federal Rule 37, which provides that an award of attorney's fees should not be ordered if, among other reasons, discovery objections were substantially justified. Fed. R. Civ.P. 37(a)(5)(A)(ii). A party meets the "substantially justified" standard when there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the motion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citations and quotations omitted). Because Plaintiff has failed to meet his burden of showing he is entitled to the requested discovery in the first place, and because he cannot show that Fareportal's arguments are unjustified, Plaintiff is not entitled to any fees incurred in bringing the instant Motion.

## CONCLUSION

For the foregoing reasons, Fareportal respectfully requests that the Court deny Plaintiff's

motion to compel Fareportal's production of documents.

Respectfully submitted,

Dated:  October 5, 2018                         s/ Eleanor M. Lackman
            New York, New York                Eleanor M. Lackman, *pro hac vice*
                                               ELackman@cdas.com
   Scott J. Sholder, *pro hac vice*
   SSholder@cdas.com
   COWAN, DₑBAETS, ABRAHAMS &
   SHEPPARD LLP
   41 Madison Avenue, 38th Floor
   New York, New York 10010
   Telephone: (212) 974-7474
   Facsimile: (212) 974-8474

   HILGERS GRABEN PLLC
   Michael T. Hilgers (#24483)
   mhilgers@hilgersgraben.com
   14301 FNB Parkway, Suite 100
   Omaha, Nebraska 68154
   Telephone: (402) 218-2106

   *Attorneys for Defendant-Counterclaim-Plaintiff*
   *Fareportal Inc.*