# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IAN V. JACOBS,<br><br>　　　　　　　　　Plaintiff,<br>　vs.<br><br>FAREPORTAL, INC.,<br><br>　　　　　　　　　Defendant. | 8:17CV362<br><br>**ORDER** |

This matter is before the court on Plaintiff's motion to compel issuance of subpoenas (Filing No. 151), and the parties' motions which are reflected in the attached emails.

Plaintiff seeks permission to serve subpoenas on Google, LLC ("Google"), Microsoft Corporation ("Microsoft"), Yahoo! Inc. ("Yahoo"), and Commission Junction ("Commission") seeking documents and communications relating to Defendant Fareportal, Inc.'s ("Fareportal") purchases of "Cheapo" as a search engine keyword, in addition to further documents and non-privileged communications outlined below. (Filing No. 151).

In addition, Defendant renews its motion for permission to compel third-party Secret Penguin to produce outstanding documents.

For the reasons stated below, Plaintiff's motions will be granted in part and denied in part and Defendant's motion to compel will be granted.

I.      FACTUAL BACKGROUND

In 1998, Jacobs purchased the domain "www.cheapo.com" for his current website. In September 2007, Plaintiff filed U.S. Registration Number 3,430,489 for the CHEAPO mark with the Patent and Trademark Office ("PTO"). In June 2013, the PTO accepted Plaintiff's Declaration of Use in Commerce and Incontestability under Sections 8 and 15. Plaintiff states he has used the cheapo.com website to sell a variety of services. Currently, Plaintiff maintains an affiliate advertising agreement with travel services website Pricline.com ("Priceline"), where users provide their desired travel data, and it is transmitted to Priceline which generates proposals and ultimately completes the transaction. Plaintiff is compensated by Priceline for completed sales, and he has allegedly generated over $7.9 million in travel-related purchases by consumers.

Fareportal is a technology company that develops computer software used to power travel-related websites, including www.cheapoair.com. CheapoAir does approximately $4 billion in global airline ticket sales annually, and Fareportal earns revenue from these sales. Fareportal also owns a federally registered, incontestable trademark—CHEAPOAIR—(No. 3,576,166) which has served as the travel website's business name since July 1, 2005.

On November 21, 2018, the court ordered staged discovery, finding it the most suitable means to achieve proportionality and efficiently and effectively dispose of the issues of the case given the challenges facing the parties. Liability discovery was ordered as the first phase with damages discovery to commence only after liability is established against either party. (See Filing No. 116). On November 7, 2018, Jacobs filed notices of subpoena to Google, Microsoft, and

Yahoo pursuant to FRCP 45 and NECivR. 45.1. The subpoenas commanded production of:

> All documents and communications relating to any Google AdWords activity by Fareportal, Inc. from 2009 through the present that involves the search keyword "cheapo" or any search phrase involving the keyword "cheapo", including but not limited to (1) analytics reports, (2) correspondence, and (3) information relating to costs, pricing, and revenues.

(Filing No. 106; Filing No. 107; Filing No. 108).

In addition, on November 16, 2018, Plaintiff filed a notice of subpoena seeking "all communications between Commission Junction and Fareportal, Inc. [sic] referencing Cheapo.com from 2006 to the present." (Filing No. 110).

On November 21, 2018, Defendant filed objections to each of the above subpoenas (Filing No. 114). On February 26, 2019, a telephonic hearing was held with the undersigned to address the dispute. (See Filing No. 140). It was not immediately resolved. Instead, Plaintiff was directed to complete the scheduled depositions, and if the information he wanted was not obtained, to again request to serve the subpoenas.

On March 22, 2019, Plaintiff moved to compel issuance of the contested subpoenas to complete liability discovery, citing his inability to obtain the requested information through depositions. (Filing Nos. 106–08; Filing No. 110).

In addition, on April 23, 2019, a conference was held with the parties, with oral argument presented as to various other discovery disputes. (Filing No. 177, audio file). The court's ruling and analysis as to each of these motions is discussed below.

## II. ANALYSIS

The Federal Rules of Civil Procedure allow for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Relevancy, for the purposes of discovery, includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). The proportionality analysis then requires the court to weigh "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### Plaintiff's Motion to Compel Issuance of Subpoenas on Google, Microsoft, Yahoo, and Commission (Filing No. 151).

Plaintiff's complaint asserts various claims against Defendant. For purposes of this motion, however, Jacobs focuses on his trademark infringement claim under the Lanham Act. (Filing No. 153, at CM/ECF p. 16, n. 64). To prevail on this claim, Jacobs must establish that (1) he owns a valid, protectable mark, (2) Defendant has used the mark in commerce without Plaintiff's consent; and (3) there is a likelihood of confusion between Plaintiff's mark and Defendant's mark. 15 U.S.C. § 1114(1); B & B Hardware, Inc. v. Hargis Indus., Inc., 569 F.3d 383, 389 (8th Cir.2009); JDR Industries, Inc. v. McDowell, 121 F.Supp.3d 872, 882 (2015).

4

Here, the central issue is whether Plaintiff's third-party subpoenas seek documents relevant to establishing the "likelihood of confusion" element of his Lanham Act claim. The Eighth Circuit has prescribed the following six factors (hereafter "SquirtCo factors") for the court to examine in assessing whether there is a likelihood of confusion:

    (1)    the strength of the owner's mark;
    (2)    the similarity of the owner's mark and the alleged infringer's mark;
    (3)    the degree to which the products compete with each other;
    (4)    the alleged infringer's intent to "pass off" its goods as those of the trademark owner;
    (5)    incidents of actual confusion; and
    (6)    the type of product, its costs and conditions of purchase.

Kemp v. Bumble Bee Seafoods, Inc. 398 F.3d 1049, 1054 (8th Cir. 2005). "[N]o one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases. Kemp, 398 F.3d at 1054 (citing SquirtCo v. Seven-Up Co., 628 F.2d 1086 (8th Cir. 1980)).

Jacobs argues the pursued information is necessary, claiming that factors such as the timing, pattern, and the extent to which Fareportal engaged in keyword bidding on Plaintiff's trademark lie at the heart of establishing liability.

> Although Fareportal has acknowledged that it purchased "cheapo" as a keyword, it has not explained the number and pattern of those purchases and has resisted further document production. Plaintiff anticipates that Fareportal's purchases were not consistent, but rose and fell in conjunction with its efforts to purchase Plaintiff's Website, further bolstering Plaintiff's claims.
> . . .

> Fareportal has testified that it communicated with Commission Junction regarding a list of potential affiliates that was reviewed by Fareportal to ensure that the recipients would be relevant to the travel industry. Plaintiff has requested such documents from Fareportal, but they have not been produced.

([Filing No. 153, at CM/ECF p. 31](#)–2).

Jacobs argues that because information sought in the subpoenas with respect to keyword bidding on "Cheapo" was not provided in depositions, the court should grant Plaintiff's motion to compel issuance of the subpoenas. Plaintiff contends this information is necessary to further develop the facts relevant to liability and to supplement Defendant's incomplete responses to party discovery. ([Filing No. 153, at CM/ECF p. 2-3](#)). In sum, Plaintiff argues that its need for the analytics surrounding Defendant's keyword bidding on Plaintiff's trademark is entirely relevant and proportional to the needs of the case.

Fareportal counters that the third-party subpoenas bear no relevance on liability and are disproportionate to the needs of the case. Defendant argues there is no material issue of fact in dispute because it has, at all stages, admitted to having regularly bid on the keyword term "Cheapo." Fareportal contends Jacobs has failed to show how the third-party subpoenaed documents would add to Defendant's admission or assist in establishing liability. Further, Defendant argues Jacobs subpoenas are disproportionate "because they request, *inter alia*, all documents and communications relating to keyword bidding by Fareportal on search phrases involving the keyword "cheapo"—part of its registered trademark—for a decade." ([Filing No. 165, at CM/ECF p. 12](#)–13).

Having reviewed the parties' briefs, oral arguments, and the record at length, the court will grant Plaintiff's motion to compel issuance of subpoenas ([Filing No. 151](#)). Plaintiff has sufficiently demonstrated that the nonprivileged keyword-bidding

data is relevant to his Lanham Act Claim and proportional to the needs of the case. See, Fed. R. Civ. P. 26(b)(1). Specifically, the court agrees that the pattern, timing, and extent to which Fareportal bid on the "cheapo" keyword could bear on, or reasonably could lead to other matters that could bear on, Fareportal's trademark-infringement liability to Jacobs. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). As Plaintiff argues, Fareportal cannot argue its pattern of keyword bidding is not relevant when, in at least one of its own prior trademark infringement suits, it has sought similar discovery to support its claim. (Filing No. 153-3, at CM/ECF p. 6).

The court further finds that inquiry into Fareportal's keyword bidding is reasonably calculated to lead to information regarding the likelihood of confusion requirement; particularly, as to the fourth SquirtCo factor discussed above. Defendant's keyword bidding could reasonably bear on Defendant's intent to "pass off" its goods as those of the trademark owner. SquirtCo v. Seven-Up Co., 628 F.2d 1086 (8th Cir. 1980).

In sum, given the inherently case-specific inquiry required under the Lanham Act, the court finds Plaintiff's request reasonably tailored under Rule 26's broad discovery mandate. Plaintiff's motion to compel issuance of subpoenas (Filing No. 151) will be granted.

### Documents from the personal email account of Fareportal employee Alexander Popescu.

Jacobs also seeks an order to compel the production of certain documents from the personal email account of ex-Fareportal Legal Compliance Officer turned General Counsel, Alexander Popescu ("Popescu"). Particularly, Jacobs seeks

those documents used for Fareportal business purposes in connection with the company's alleged attempt to purchase Jacobs' website.

Plaintiff contends that on March 12, 2012, Popescu sent an email from his personal Gmail account to Jacobs to express his interest in purchasing the Cheapo trademark, and potentially its domain name. Plaintiff argues that because Popescu admitted at his deposition to having sent this email from his personal email account at Fareportal's direction,[1] Plaintiff should be permitted to compel production of these documents.

Defendant objects to Plaintiff's request, arguing that Jacobs waived the opportunity to request the documents through his failure to subpoena Popescu for documents within the proper timeframe. Therein, Defendant argues that because Jacobs subpoenaed only Popescu's testimony and not document production, Plaintiff is foreclosed from doing so at this late stage.

A scheduling order may be modified "for good cause and with the judge's consent." [Fed. R. Civ. P. 16(b)(4)](). On November 21, 2018, the court entered an order setting the parties' deadline for completing written liability discovery under Rules 33, 34, and 36 of the Federal Rules of Civil Procedure for February 22, 2019, with depositions as to the issue of liability due April 12, 2019, and motions to compel responses to written discovery due March 8, 2019. ([Filing No. 129]()). On January 2, 2019, the parties' motion to compel deadline was extended to April 19, 2019. ([Filing No. 130]()).

---

[1] To date, Popescu has retained the same representation as Fareportal in this matter.

On March 4, 2019, Jacobs filed notice of his intent to take the deposition of Popescu. ([Filing No. 145](#)). The subpoena sought Popescu's deposition testimony, but it did not request documents. (<u>Id.</u>) On April 3, 2019, Jacobs served an amended subpoena to Popescu. The amended subpoena merely changed the location of the deposition proceeding. ([Filing No. 159](#)). It did not request production of documents.

The parties' motion to compel responses to written discovery deadline (April 19, 2019) has passed without Jacobs seeking to compel document production, in any form, from Popescu. Meanwhile, Plaintiff has not moved to modify the scheduling order to extend this deadline. The court agrees with Defendant. Plaintiff waived the opportunity to request the documents through his failure to subpoena Popescu for documents within the proper timeframe or to timely move this court to adjust the scheduling order otherwise. Plaintiff's request to compel document production from Alexander Popescu will be denied.

<u>Documents relating to third-party Respond2Communications, Inc.<br>("R2C") and its work on the "We Go Cheapo" campaign.</u>

Jacobs next seeks an order compelling production of documents relating to third-party R2C and its work on the "We Go Cheapo" Campaign. R2C is the advertising agency that created, published, and ran Fareportal's contested "We Go Cheapo" campaign. Jacobs seeks contracts and/or statements of work between Fareportal and R2C or any other information R2C possesses with respect to the contested commercial, cheapo mark, cheapo.com, or this lawsuit in general, to determine what R2C was asked and/or contracted to do. (See [Filing No. 158](#)).

Fareportal in response argues it has provided ample document production to establish its hiring of R2C to create the ads at issue, and that the confidential

information sought is disproportionate and irrelevant to the needs of the case. (Filing No. 177, audio file). Further, Defendant argues that the information regarding internal R2C meetings and discussions Plaintiff seeks does not bear on Fareportal's knowledge, and therefore will not be probative as to any issue at bar. (Id.)

The court finds Plaintiff's request sufficiently tailored and relevant to the needs of the case. As discussed above, in forward- and reverse-confusion cases alike, the court must weigh the SquirtCo factors to determine likelihood of confusion. Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC, 745 F.3d 877, 887 (8th Cir. 2014) (quotations omitted) (quoting Co–Rect Products, Inc. v. Marvy! Advertising Photography, Inc., 780 F.2d 1324, 1330 (8th Cir. 1985)); The fourth SquirtCo factor analyzes whether Fareportal intended to represent CheapoAir as being affiliated with Cheapo.

"When reverse, rather than direct, confusion is alleged, 'intent to confuse' is unlikely to be present . . . . [nonetheless] if such an intent to confuse does, in fact, exist in a reverse confusion case, it should weigh against the defendant in the same manner as it would in a direct confusion case." Eyebobs, LLC v. Snap, Inc. 259 F.Supp.3d 965, 976 (D. Minn. 2017). For example, in Commerce Nat. Ins. Serv., Inc. v. Commerce Ins. Agency., 214 F.3d 432, (3rd Cir. 2000), the parties—each aware of the other—had maintained similar trademarks in noncompetitive industries for a substantial number of years. Ultimately, however, one company expanded into the other's area of trade and intentionally advertised its business under a near-identical mark. Id. at 435–36. In holding that the lesser-known company could maintain its claim against the larger for reverse confusion, the Third Circuit expressly acknowledged the potential that a larger company could adopt the mark with the intent to extinguish its smaller rival from the market. Id. at 444-

45. The Third Circuit highlighted that it was "this sort of usurpation of business identity that the reverse confusion doctrine was designed to prevent." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 232 (3rd Cir. 2000).

The document production Jacobs seeks from R2C could bear on the issue of whether Fareportal intended to pass off CheapOair as being affiliated with Cheapo. Even though such an intent to confuse would be unlikely in a reverse-confusion claim, the issue cannot be decided at this stage. The broad scope of Fed. R. Civ. P. 26 generally allows discovery "unless it is clear the information sought can have no possible bearing on the case." Ingram v. Covenant Care Midwest, Inc., 2010 WL 1994866, at *3 (D. Neb. 2010). The court will allow Jacobs to compel the production of documents it seeks, as discussed, from R2C.

### Jacobs' Subpoena to Emely Romero Littrell.

Jacobs further seeks a third-party subpoena to Emely Romero Littrell ("Littrell") for production of documents (dating back from May 2016 to the present) and deposition testimony. (Filing No. 177, audio file). Plaintiff alleges Corsearch, Inc. ("Corsearch") or Citizen Hawk used Littrell to contact Jacobs in May 2016 about purchasing Plaintiff's website and/or domain name. (Id.) Because Littrell reportedly used a personal email account to contact Jacobs, Plaintiff argues, Corsearch is purportedly not in possession of these documents. (Id.) Jacobs therefore seeks documents related to the May 2016 purchase offer extended from Littrell's personal email account. (Id.)

Fareportal objects to Plaintiff's non-party subpoena to Littrell arguing it has already produced this necessary information, the request would be unduly burdensome to Littrell, and on grounds the information requested is disproportionate to the needs of the case. (Id.)

For similar reasons as stated directly above, Plaintiff's subpoena to Littrell will be allowed. Plaintiff has described the narrow set of documents it seeks for production using a sufficiently limited topic description and timeframe. Further, the information sought from the request may be relevant to proving the SquirtCo. factors. Plaintiff's subpoena to Littrell will be permitted.

<u>Communications with third-party Corsearch that have been withheld by Fareportal on the basis of privilege objections.</u>

Next, Plaintiff seeks those documents within the possession, custody, and control of Fareportal concerning communications between Fareportal and Corsearch (or, formally "Citizen Hawk") relating to cheapo.com. (Id.)

On March 20, 2019, the court held a telephonic hearing with the parties to address Plaintiff's intended subpoena to Corsearch and Defendant's objections to that subpoena. (See [Filing No. 149](#), audio file). Defendant raised relevancy, privilege, undue burden, and other objections. After conferring with counsel, I ordered that Plaintiff's proposed third-party subpoena on Corsearch be permitted, pursuant to the following terms:

1) Document Request No. 3 is withdrawn with Plaintiff's consent.

2) Document Request No. 6 shall be modified to request "Documents and communications with third parties acting by or on behalf of Fareportal relating to the Cheapo Mark or cheapo.com."

3) Any documents produced by Corsearch in response to the subpoena shall be provided to Defendant's counsel, and not directly to Plaintiff's counsel.

> 4) With the foregoing modifications to the subpoena language, the subpoena may be served on Corsearch, Inc.
>
> 5) Upon receipt of any documents from Corsearch, Inc. in response to Plaintiff's subpoena, defense counsel shall promptly review the documents and produce any nonprivileged documents to Plaintiff's counsel. If any documents are withheld from production to Plaintiff's counsel by Defendant, defense counsel shall promptly contact the court and opposing counsel to discuss the procedure and schedule for resolving Defendant's privilege and/or work product objections.

([Filing No. 150](#)).

On April 23, 2019, the parties engaged in another telephonic hearing to address outstanding discovery disputes. ([Filing No. 177](#), audio file). The parties' continued to disagree on Plaintiff's proposed subpoena to obtain Fareportal-Corsearch communications (Id.) Jacobs argues that while Fareportal has produced a document showing some of the work Corsearch did, outstanding documents continue to be withheld by Fareportal on the basis of unfounded privilege objections. (Id.) Specifically, Plaintiff argues Defendant cannot raise privilege objections because the requested communications were made to facilitate a business deal, not to obtain legal advice. (Id.) In support of this argument, Plaintiff directs the court's attention to the Corsearch website's terms and conditions, which advise that Corsearch is not a law firm, and therefore cannot engage in legal opinions, etc. (Id.)

During the parties' April 23, 2019 call with the court, Fareportal argued that while it does not deny someone reached out to buy the Cheapo.com domain name, communications between Corsearch and Fareportal lack relevance, and therefore

Plaintiff's request should be denied. (Id.) Defendant did not renew or address its prior privilege objection. (See [Filing No. 177](#)).

The court has already ruled on this issue, and its prior order stands. (See [Filing No. 150](#)). Defense counsel shall immediately produce any nonprivileged documents which Corsearch has produced. If any documents have been withheld from production to Plaintiff's counsel, Defense counsel shall contact the court and opposing counsel promptly to discuss the procedure and schedule for resolving Defendant's privilege and/or work-product objections.

### Custodian information for two specific documents produced by Fareportal.

Jacobs seeks to identify the custodian for two documents (40-43 and 94-95) produced by Fareportal. ([Filing No. 177](#), audio file). The first document, date stamped March 14, 2014, is a screen shot of the Cheapo.com website and a printout of the Cheapo trademark from the USPTO website. (Id.) The second document, date stamped October 23, 2015, is a web printout from Bing containing "cheapo" in the search bar of the first page and search results which include "cheapoair.com" and "cheapo" on the second page. (Id.)

Jacobs seeks the meta data to establish the documents' custodian(s), arguing that the timing of the inquiries—before the contested "we go cheapo" commercial ran but after keyword bidding had begun—demonstrates that someone at Fareportal was inquiring as to the cheapo website. (Id.)

Defendant objects, arguing discovery is closed and Plaintiff is requesting too much additional and irrelevant material. (Id.) Fareportal further argues it produced these documents months ago, with no request at that time to have the custodian

identified. (Id). It would be overly burdensome, Defendant argues, to require Fareportal to dig up custodian information at this late stage, and moreover—irrelevant because Fareportal has already conceded its awareness of cheapo.com. (Id.) Therefore, Defendant argues Plaintiff's attempt to gather the custodian information here is nothing more than a fishing expedition.

The court agrees with Defendant. The proper time to seek the custodian information for these documents was at the time the document requests were made. It would be overly burdensome at this late stage to require Fareportal to dig up the meta data Plaintiff now requests. Moreover, Plaintiff has failed to compellingly show how this additional material might help in proving its claim. Plaintiff's request to compel custodian information for documents 40-43 and 94-95 will be denied.

### Fareportal's renewed request to file a motion to compel Secret Penguin.

Finally, Fareportal seeks to renew its request to file a motion to compel information from cheapo.com's business partner, Secret Penguin. ([Filing No. 177](#), audio file). As an initial matter, Defendant argues it is seeking documents it requested in its original subpoena. Defendant contends Plaintiff did not pose any written objection to that subpoena, but rather agreed to produce the documents during the deposition of Secret Penguin employee, Dave Nelson. Defendant alleges that after agreeing to produce these documents, Nelson abruptly changed his mind, claiming he is not required to conduct the search because the subpoena was served on "Secret Penguin." Defendant maintains that because the document request was directed toward all Secret Penguin employees, the contested documents fall squarely within the ambit of the subpoena. (Id.)

In response, Jacobs argues the request is overly burdensome, pointing out that Secret Penguin is a small company that has already made two document productions, including 318 pages of emails.

Based on the above, the court will permit Defendant's motion to compel on Nelson at Secret Penguin, with respect to the unprivileged "additional clean-up documents" referenced in Fareportal's April 25, 2019 email correspondence attached hereto. Having reviewed Defendant's original subpoena for document production to "SecretPenguin c/o Dave Nelson" the court agrees with Defendant that the documents sought fall within the scope of the original subpoena. Further, the court finds the request relevant to the needs of the case and not overly burdensome.

Accordingly, IT IS HEREBY ORDERED:

1) Plaintiff's motion to compel issuance of subpoenas on Google LLC, Microsoft Corporation, Yahoo! Inc., and Commission Junction, ([Filing No. 151](Filing No. 151)), is granted.

2) Plaintiff's demand for production from the personal email account of ex-Fareportal employee Alexander Popescu is denied.

3) Plaintiff's demand for document production from third-party Respond2Communications, Inc. regarding its work on the "We Go Cheapo" campaign as discussed herein is granted.

4) Plaintiff's request for leave to serve a third-party subpoena on Emely Romero Littrell for production of documents (May 2016 to present) and deposition testimony as discussed herein is granted.

5) Plaintiff's demand for production of documents within the possession, custody, and control of Fareportal concerning communications

between Fareportal and Corsearch (or, formally "Citizen Hawk") relating to cheapo.com is granted.

    A. Defense counsel shall immediately produce any unprivileged documents which Corsearch has provided.

    B. If any documents have been withheld from production to Plaintiff's counsel, Defense counsel shall contact the court and opposing counsel promptly to discuss the procedure and schedule for resolving Defendant's privilege and/or work product objections.

6) Plaintiff's request for custodian information for documents 40-43 and 94-95 is denied.

7) Defendant's demand for production of "additional clean-up documents" from Dave Nelson at Secret Penguin is granted.

8) To the extent either party believes the Stipulated Protective Order ([Filing No. 41](#)) will be inadequate to protect the confidentiality of information and items that will be produced as ordered herein, counsel shall promptly propose additional language to be added to the protective order or, if the parties cannot agree on this issue, they shall notify the court to discuss their respective concerns.

Dated this 15th day of May, 2019.

                              BY THE COURT:

                              *s/ Cheryl R. Zwart*
                              United States Magistrate Judge

| From: | Jacob Kring |
|---|---|
| To: | zwart@ned.uscourts.gov; John.Passarelli@kutakrock.com; Carol.Svolos@KutakRock.com; Scott Sholder; Eleanor M. Lackman; Lindsay R. Edelstein; Marissa Lewis; Jennifer Atwood |
| Cc: | Joel Bailey; Britt McClung |
| Subject: | Jacobs v. Fareportal; Case No. 17-CV-00362 |
| Date: | Thursday, April 25, 2019 4:31:18 PM |

Dear Judge Zwart,

Mr. Bailey, who attended the teleconference for Plaintiff, drafted this e-mail for Plaintiff and I am sending it on his behalf. He is presently in a hearing in another matter so I'm covering for him.

During the discovery teleconference on April 23, 2019, your honor asked the parties to advise concerning whether they had resolved any of the discovery issues discussed during the call by 5pm today. Plaintiff writes in order to advise of the progress and the parties' positions.

**Plaintiff Ian Jacobs' Statement**

At 8:20 central this morning, Plaintiff Ian Jacobs made a supplemental production of documents fully resolving the two issues raised by Fareportal on the call relating to Mr. Jacobs' production. Fareportal's third issue related to a purported issued between non-parties Dave Nelson and Secret Penguin. Accordingly, Plaintiff Ian Jacobs believes he has resolved Fareportal's outstanding discovery disputes through a supplemental production and explanation today.

In response, Fareportal advised this morning that it would be providing information on whether or not it knows if the customers referenced in Plaintiff's prior discovery deficiency letter were indeed Fareportal customers. Accordingly, the following items remain open with respect to Jacobs' requests to Fareportal:

(i) Documents from the personal email account of Fareportal employee Alexander Popescu that was utilized for Fareportal business purposes in connection with attempting to purchase Jacobs' website;

(ii) Documents relating to third-party R2C and its work on the "We Go Cheapo" campaign;

(iii) Non-privileged communications with third-party Corsearch, Inc. that have been withheld by Fareportal on the basis of unfounded privilege objections;

(iv) Documents confirming that certain confused customers who contacted Jacobs were in fact Fareportal customers;

(v) Custodian information for two specific documents produced by Fareportal;

(vi) Jacobs' Subpoena to Respond2 Communications, Inc. and Fareportal's objections thereto;

(vii) Jacobs' Subpoena to Emely Romero Littrell and Fareportal's objections

| From: | Lindsay R. Edelstein |
|---|---|
| To: | zwart@ned.uscourts.gov; Jennifer Atwood |
| Cc: | "Joel Bailey"; Passarelli, John P.; Svolos, Carol A.; Jacob Kring; Britt McClung; Michael Hilgers; Eleanor M. Lackman; Marissa Lewis; Scott Sholder |
| Subject: | Jacobs v. Fareportal, 8:17-cv-362 |
| Date: | Thursday, April 25, 2019 4:56:55 PM |
| Attachments: | image784001.png |

Dear Judge Zwart:

Pursuant to Your Honor's request during the discovery teleconference on April 23, 2019, we write on behalf of defendant/counterclaim-plaintiff Fareportal Inc. ("Fareportal") to advise as to whether the discovery issues discussed have been resolved.

As an initial matter, while not mentioned in Mr. Kring's 4:30pm email, Fareportal provided plaintiff counterclaim-defendant Ian V. Jacobs' ("Jacobs") counsel with confirmation, in the form of an employee declaration, whether the customers identified by Jacobs are Fareportal customers (item iv in Jacobs' list). This declaration was sent by Fareportal at least 30 minutes before Mr. Kring's email was sent to the Court, so it is unclear why he did not mention receiving it, and why this item is still being represented as outstanding.

Fareportal's position, which we sent to Mr. Bailey and Mr. Kring at 4:01pm following Mr. Bailey's request today that we draft a joint email to the Court, is as follows:

Fareportal's request for a supplemented version of the document pertaining to affiliate advertising has been satisfied by Jacobs' production this morning. With respect to Fareportal's request for evidence that Jacobs ever sent discounts to customers whose email addresses he collected via an opt-in box on cheapo.com, Jacobs' counsel's representation that they do not have any such documents to provide obviates the need for Court intervention on this point. Fareportal respectfully renews its request that the Court allow it to file a motion to compel third-party SecretPenguin to produce the outstanding documents Fareportal seeks – namely, an email confirmation of Mr. Nelson's booking through cheapo.com, and communications between it and its attorneys, on the one hand, and Jacobs' lawyers on the other hand.

We thank the Court for its attention to this matter and are happy to provide whatever other details or information the Court may require.

Respectfully submitted,
Lindsay R. Edelstein



**Lindsay Edelstein**
Associate
Cowan, DeBaets, Abrahams & Sheppard LLP
41 Madison Avenue, 38th fl., New York, NY 10010
tel: 212-974-7474 / fax: 212-974-8474
LEdelstein@cdas.com / www.cdas.com

\*\*\* This e-mail and any files transmitted with it are confidential. Its contents are intended solely for the Recipient(s) indicated and may also be

| | |
|---|---|
| **From:** | Jacob Kring |
| **To:** | zwart@ned.uscourts.gov; John.Passarelli@kutakrock.com; Carol.Svolos@KutakRock.com; Scott Sholder; Eleanor M. Lackman; Lindsay R. Edelstein; Marissa Lewis; Jennifer Atwood |
| **Cc:** | Joel Bailey; Britt McClung |
| **Subject:** | RE: Jacobs v. Fareportal; Case No. 17-CV-00362 |
| **Date:** | Thursday, April 25, 2019 4:57:54 PM |

Judge Zwart:

I've just been informed that a few moments ago we were provided a declaration from Fareportal relating to item (iv) below and highlighted yellow. I have not yet had the chance to review that declaration, but I think we can "stay" that issue (iv) for ruling by the Court pending our review of whether the issue is addressed. The remaining issues identified below are still outstanding.

Jacob B. Kring
**Hedrick Kring, PLLC**
1700 Pacific Avenue, Suite 4650 | Dallas, Texas 75201
214.880.9625 direct | 214.206.6182 mobile | 214.481.1844 fax
Jacob@HedrickKring.com | www.HedrickKring.com

**From:** Jacob Kring
**Sent:** Thursday, April 25, 2019 4:30 PM
**To:** zwart@ned.uscourts.gov; John.Passarelli@kutakrock.com; Carol.Svolos@KutakRock.com; Scott Sholder <ssholder@cdas.com>; Eleanor M. Lackman <elackman@cdas.com>; Lindsay R. Edelstein <LEdelstein@cdas.com>; Marissa Lewis <mlewis@cdas.com>; Jennifer_Atwood@ned.uscourts.gov
**Cc:** Joel Bailey <Joel@hedrickkring.com>; Britt McClung <Britt@hedrickkring.com>
**Subject:** Jacobs v. Fareportal; Case No. 17-CV-00362

Dear Judge Zwart,

Mr. Bailey, who attended the teleconference for Plaintiff, drafted this e-mail for Plaintiff and I am sending it on his behalf. He is presently in a hearing in another matter so I'm covering for him.

During the discovery teleconference on April 23, 2019, your honor asked the parties to advise concerning whether they had resolved any of the discovery issues discussed during the call by 5pm today. Plaintiff writes in order to advise of the progress and the parties' positions.

**Plaintiff Ian Jacobs' Statement**

At 8:20 central this morning, Plaintiff Ian Jacobs made a supplemental production of documents fully resolving the two issues raised by Fareportal on the call relating to Mr. Jacobs' production. Fareportal's third issue related to a purported issued between non-parties Dave Nelson and Secret Penguin. Accordingly, Plaintiff Ian Jacobs believes he has resolved Fareportal's outstanding discovery disputes through a supplemental production and explanation today.

In response, Fareportal advised this morning that it would be providing information on whether or not it knows if the customers referenced in Plaintiff's prior discovery deficiency letter were indeed