IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IAN V. JACOBS,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>FAREPORTAL INC.,<br><br>    Defendant/Counterclaim-Plaintiff. | Civil Action No. 8:17 Civ. 00362<br><br>**MEMORANDUM OF LAW IN SUPPORT OF FAREPORTAL INC.'S MOTION FOR CLARIFICATION OF THE COURT'S SEPTEMBER 19, 2019 MEMORANDUM AND ORDER** |

Pursuant to the Court's Order dated April 1, 2020 (Dkt. No. 245), and in the interest of efficiency and conservation of judicial and party resources, defendant/counterclaim-plaintiff Fareportal Inc. ("Fareportal"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion for clarification the Court's September 19, 2019 Memorandum and Order (Dkt. No. 232) ("Order"). Fareportal does not seek immediate relief, but rather clarification on the issues sufficiently prior to trial to ensure that the parties and the Court do not expend resources on issues that were the subject of the parties' summary judgment motions, but are not intended to be or remain in the case.

## INTRODUCTION

On April 29, 2019, the parties filed cross-motions for summary judgment on the bifurcated issue of liability. Specifically, plaintiff/counterclaim-defendant Ian V. Jacobs ("Jacobs") filed a motion for partial summary judgment as to all of Fareportal's counterclaims. *See* Dkt. No. 178. Fareportal filed a motion for summary judgment in full, including as to all claims asserted by Jacobs as well as all counterclaims asserted by Fareportal. *See* Dkt. No. 182. Both motions were

fully briefed as of June 21, 2019. *See* Dkt. Nos. 197, 219 (briefs in opposition and reply to Jacobs' motion); *see also* Dkt. Nos. 204, 216 (briefs in opposition and reply to Fareportal's motion).[1]

On September 19, 2019, the Court issued an Order ruling on both parties' summary judgment motions. *See* Dkt. No. 232. In short, the Court denied Jacobs' motion in full, and granted Fareportal's motion as to Jacobs' counterfeiting, tortious interference, and Nebraska Consumer Protection Act claims, but denied the motion in all other respects. *Id.*

At a status conference held days after the Order was issued, Judge Zwart urged the parties to focus their efforts on settlement going forward. *See* Dkt. No. 233. Consistent with this recommendation, and as the Court is aware, the parties have spent the past several months diligently exploring settlement negotiations by various means. *See* Declaration of Eleanor M. Lackman, dated April 15, 2020 ("Lackman Decl."), ¶ 2. In December 2019, the parties participated in an all-day private mediation, but it was unsuccessful. *Id.* ¶ 3. At Jacobs' insistence, in January 2020, Jacobs had an in-person meeting with certain C-suite executives from Fareportal's marketing and finance teams, without their lawyers present, in attempt to negotiate a settlement on business terms. *Id.* ¶ 4. This, too, was unsuccessful. *Id.* The parties' outside counsel had discussions thereafter that looked quite promising through the first week of March, but ultimately, these discussions deteriorated once it became clear that the parties' had fundamental disagreements regarding their respective rights and remedies under the law. *Id.* ¶ 5. Unable to reach a resolution,

---

[1] The papers were voluminous: While its opening papers contained 70 pages of briefing (including the required statement of undisputed facts) and roughly 250 pages of exhibits, Fareportal ultimately submitted 176 pages of briefing and roughly 608 pages of exhibits pertaining to its motion to dismiss Jacobs's nine claims and motion in support of judgment on Fareportal's five counterclaims, as well as on its defense against Jacobs' cross-motion. Jacobs submitted 129 pages of briefing and 1,880 pages of exhibits just in opposition to Fareportal's motion, and another 82 pages of briefing and 220 pages of exhibits for its narrower motion to dismiss Fareportal's counterclaims. Fareportal appreciates the Herculean efforts of the Court to get through them, particularly with the thoroughness that clearly was exercised.

the parties recently elected to move ahead with the proceedings while continuing their efforts to settle. *Id.*

It is in this context that Fareportal has turned back to preparing for a possible trial and, in doing so, recognized several points in the Court's Order that require clarification. *Id.* ¶ 6. Fareportal promptly raised these points with Jacobs and the Court.[2] *Id.* ¶ 7. Specifically, on March 30, 2020, Fareportal's counsel notified Jacobs' counsel of Fareportal's anticipated request for clarification, hoping that perhaps some of the issues might be resolved by the parties; Jacobs' response was a vehement objection to raising the issues in the first place. *Id.* The next day, Fareportal sent a letter to the Court requesting clarification and Jacobs sent an email in response, implying that counsel was seeking to use the pandemic to their advantage when it was Jacobs' counsel's statements that encouraged Fareportal's counsel to put any clarification motion on hold. *Id.*; *see also* Dkt. No. 245 at 2-8 (copies of both parties' submissions). On April 1, 2020, the Court issued an order indicating that it "has reviewed the emailed letters submitted by the parties," but "[d]ue to the press of other matters related to the COVID-19 Pandemic, . . . will not take up [Fareportal's] requests absent a formal motion." Dkt. No. 245.

Accordingly, in the interest of preparing for and conducting a trial in as streamlined a fashion as possible, Fareportal respectfully moves the Court for an order clarifying specific points

---

[2] Any "delay" between the breakdown of settlement of negotiations, in or around early March 2020 (roughly one week before Fareportal's counsel's firm instructed that personnel work from home except where office presence was necessary, and about two weeks before New York City began implementing mandatory "shelter in place" orders), and Fareportal's request for clarification, at the end of the month, is due to Fareportal's counsel's time spent reviewing and refamiliarizing itself with the Court's Order and stresses caused by the COVID-19 pandemic. It cannot be understated that the pandemic has impacted Fareportal's business significantly, being in the travel industry; the Order also required Fareportal and its outside counsel to shift focus to urgent matters directly related to the impacts of the pandemic. Suffice it to say, nobody has been sitting on their hands since it became clear in the first week of March, that the parties would not be able to bridge the significant gap between their proposals. *Id.* ¶ 8. Nor does the timing prejudice Jacobs, as explained in the accompanying Declaration. *See id.* ¶ 9.

3

in its Order that leave certain claims or issues either unaddressed or otherwise ambiguous—an understandable outcome in light of the volume of claims and submissions from the parties, but one that has an impact on the nature and scope of any trial that may happen if the case does not settle. Fareportal wishes to clarify that it is not seeking a prompt ruling, and it is particularly mindful of the stresses on the Court during this time. Rather, because of the timing and the suggestion that the parties not involve the Court while they are focused on settlement discussions, Fareportal has been stuck with the choice of having to submit this motion now, at an unideal time, or wait for opposing counsel to object on grounds of delay, as it has already done. *See* Lackman Decl. ¶ 6.

Importantly, Fareportal does not seek reconsideration on any point briefed and decided, even if it disagrees with the interpretation of the facts or the law; rather, it raises only specific points and issues that remain unclear or which were newly raised by the Court in its Order. This submission reflects Fareportal's hope, with a goal that is in the interest of both parties, to ensure that if a particular claim or issue is no longer before the Court, the resources of the Court and the parties are not expended on those points. Similarly, Fareportal requests that a new issue that the Court raised, regarding descriptiveness, be removed from the case, as neither party has raised it in its claims, defenses, or prior discovery – likely for the reason that such an angle is not legally cognizable under the facts of this case.

## **ARGUMENT**

### I. **LEGAL STANDARD APPLICABLE TO MOTIONS FOR CLARIFICATION**

Although the Federal Rules of Civil Procedure do not expressly mention motions for clarification, it is well-established that a district court has the inherent power to clarify and interpret ambiguities in its own interlocutory orders during the pendency of the action. *See K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) ("The district court has the inherent

power to reconsider or modify an interlocutory order any time prior to the entry of judgment.") (citation omitted); *see also, e.g.*, *Lovely Skin, Inc. v. Ishtar Skin Care Prod., LLC*, No. 8:10-CV-87, 2012 WL 379930, at **10-11 (D. Neb. Feb. 6, 2012) (granting motion to clarify prior order). Because the Court's Order here does not enter final judgment, it is an interlocutory order, and "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Patterson v. City of Omaha*, 779 F.3d 795, 800 (8th Cir. 2015) (where the "district court bifurcat[ed] the issues . . . into two separate phases," judgement entered after the first phase "was *not* a 'final decision'") (emphasis in original).

Additionally, Rule 60(a) of the Federal Rules of Civil Procedure affords a district court the opportunity to clarify or correct any decision (or a portion thereof) "arising from an oversight or omission whenever one is found." Fed. R. Civ. P. 60(a); *see, e.g.*, *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108 (ERW), 2009 WL 1451700, at *2 (E.D. Mo. May 20, 2009) (granting motion to clarify and/or correct a prior order pursuant to Federal Rule 60(a); noting that "[o]rders may be corrected for the purpose of accurately reflecting a decision that the [c]ourt actually made" "at any time") (internal quotation marks and citation omitted).

As noted, this is <u>not</u> a motion for reconsideration. Fareportal does not seek to "re-open" the summary judgment briefing nor to "re-litigate" the issues therein. Rather, it simply seeks clarification and understanding of the decision that this Court has actually rendered. However, even if this motion is construed as one for reconsideration (as Jacobs is expected to argue), the Court still may grant relief to Fareportal pursuant to its "inherent power to reconsider," *K.C. 1986 Ltd.*, 472 F.3d at 1017, and/or Rule 60(b) of the Federal Rules of Civil Procedure, which provides, in pertinent part, that a "court may relieve a party . . . from . . . [an] order . . . for . . . any [] reason that justifies relief" where, as here, the motion is "made within a reasonable time." Fed. R. Civ.

5

P. 60(b)(6) & (c);[3] *Elder-Keep v. Aksamit*, 460 F.3d 979, 985 (8th Cir. 2006) ("[M]otions for reconsideration are nothing more than Rule 60(b) motions when directed at non-final orders.") (internal quotation marks and citation omitted); *see, e.g.*, *Birge v. Smeall*, No. 8:13-CV-136 (LES), 2013 WL 6631653, at *2 (D. Neb. Dec. 17, 2013) (exercising inherent power to reconsider order).

## II.   CLARIFICATION OF THE COURT'S ORDER IS NEEDED TO RESOLVE AMBIGUITIES AND PROMOTE EFFICIENCY AND JUDICIAL ECONOMY

### A.   The Court's Order Does Not Address Fareportal's Request to Dismiss Jacobs' False Advertising Claim for Failure of Pleading and Proof.

As the Court recognized, Jacobs asserted a cause of action for "false advertising and designation of origin" (Order at 13), which Fareportal had observed appears to be a mash-up of two separate, and very distinct, causes of action under the Lanham Act:  (1) false designation of origin (15 U.S.C. § 1125(a)(1)(A)), and (2) false advertising (15 U.S.C. § 1125(a)(1)(B)).  *See* Dkt. No. 183 at 33 & n.15.  Fareportal identified the very different standards that apply to the former claim (essentially, a variation of a trademark infringement claim, focused on designations of origin) and the latter claim (which, generally stated, targets express or implied statements about the nature or quality of a good or service, *e.g.*, "9 out of 10 doctors prefer brand X over brand Y" or "using mouthwash is equally as effective as flossing").  *See id.*  Fareportal also noted that Jacobs never identified any false statement as the law requires (*id.* at n.15), and Jacobs did not dispute the point.  Accordingly, the false advertising claim should no longer be in the case.  *See United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998) (false advertising claim requires proof

---

[3] Notably, the reason for Fareportal's request—to clarify the issues that remain for trial in the interest of efficiency and conservation of judicial and party resources—does not fall under any of the specific reasons enumerated in Rule 60(b)(1)-(5), and therefore, justifiably invokes the "catch-all" provision Rule 60(b)(6). This motion is primarily driven by Fareportal's appreciation of the Court's pragmatic approach, and its encouragement not to squeeze when there is little juice to gain, or here, where there is potentially none at all because issues that fall within the concluding statement in the Order are not in fact intended to remain in the case.

6

of, *inter alia*, "a false statement of fact by the defendant in a commercial advertisement about its own or another's product"); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument").

However, despite listing Jacobs false advertising claim in the Court's overview of Jacobs' litany of causes of action pertaining to Fareportal's television/radio ad and longstanding keyword bidding (Order at 13), at the start of its analysis some pages later (*id.* at 17), the Court does not mention the false advertising claim, and therefore, it appears that the claim remains in the case by default. Because Jacobs has not sought to support his claim at all, it should not be an issue for trial on which the parties would need to prepare jury instructions or engage in other preparation. Indeed, Fareportal has no idea what the false representation is that it is alleged to have made: there is only an identification in the Complaint and no allegations to satisfy even the basic requirements of Fed. R. Civ. P. 8 that would put Fareportal on notice of the false or misleading statement of fact that would give rise to an allegation under 15 U.S.C. § 1125(a)(1)(B). As a result, Fareportal is left to guess as to how it should rebut Jacobs' claim. Therefore, Fareportal respectfully requests that the Court clarify its Order to confirm that no false advertising claim remains in the action for trial.

### B. Judgment on Jacobs' Unjust Enrichment Claim was the Subject of Fareportal's Motion, not Jacobs' Motion, Leaving the Relevant Portion of Fareportal's Motion Unaddressed.

In its motion, Fareportal asked for judgment dismissing Jacobs' claims against it and affirmatively asked for judgment on its counterclaims against Jacobs. *See* Dkt. No. 182. In contrast, Jacobs asked for dismissal only of Fareportal's claims against it—not for judgment affirmatively on his claims. *See* Dkt. No. 178. However, the Order (at 39) denies Jacobs' request for judgment on his unjust enrichment claim, but Jacobs did not make this request.

It was Fareportal that asked for Jacobs' unjust enrichment claim to be dismissed—in particular, on the ground that unjust enrichment claims that are duplicative of Lanham Act claims cannot survive without a separate act that would open the door to such an additional claim, and that an equitable remedy is not available where one at law exists. *See* Dkt. No. 183 at 53-54; *see also Select Comfort Corp. v. Baxter*, 156 F. Supp. 3d 971, 994 (D. Minn. 2016) (granting defendant's summary judgment motion on plaintiffs' unjust enrichment claim since "it appear[ed] that [p]laintiffs ha[d] an adequate remedy at law"). Fareportal therefore respectfully requests that the Court clarify whether Fareportal's motion to dismiss Jacobs' unjust enrichment claim as a matter of law is granted or denied so that the parties know whether this claim raises an issue of fact for trial.[4]

### C. It Is Unclear Whether Jacobs May Maintain a Claim Against Fareportal Arising from Its Bidding on the Term "Cheapo" for CHEAPOAIR®-Branded Advertisements in Internet Search Results.

Jacobs' claims arise from two acts: (1) the radio/television ads, which contained the "We Go CheapO" slogan and which ran for 16 months in 2016-17, and (2) the bidding on the term "cheapo" (among many other misspells of Fareportal's "CheapOair" name), which Fareportal has

---

[4] Similar confusion seems to have arisen regarding Fareportal's various affirmative defenses, which Fareportal briefly referenced collectively to underscore the overall theme that Jacobs has spent more efforts to offer a website that looks like Fareportal's CheapOair brand than he has in trying to develop his later-created travel referral site under his claimed "Cheapo" brand independently. *See* Dkt. No. 183 at 55. Jacobs did not move to strike Fareportal's affirmative defenses, but the Court appears to have done so as to the mitigation defense, adopting Jacobs' deflective misconstruction of the defense. *See* Order at 36; Dkt. No. 197 (Jacobs Opp.) at 127; *compare* Dkt. No. 54 (Answer) at 14 ("Plaintiff has suffered no damages, and even if he did, he failed to mitigate them."). However, as the pleading makes clear, the defense is directed at damages. *See id.*; *see also Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1215 (S.D. Cal. 2016); *accord Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1039 (C.D. Cal. 2011) (declining to address the defendant's failure to mitigate defense on summary judgment because it is "pertinent only to the issue of damages and [is] not [a] defense[] to Plaintiff's claims for trademark infringement and unfair competition"). The Court's Order remains unclear about whether its dismissal of the defense is as to liability only (as to which the defense was not asserted), or for all purposes (*i.e.*, including with respect to damages). Particularly as the parties are in the damages phase of the case, Fareportal submits that clarification on this ground may prevent confusion and objections among the parties regarding the taking of discovery on this point.

been doing consistently for over a decade as part of its keyword advertising search-engine marketing strategy. In the Order (at 27), the Court notes that bidding on keywords "is not actionable as unfair competition" without some "additional behavior that confuses consumers" (such as displaying the trademark in the resulting advertisement in a confusing manner, which Fareportal is not alleged to have done). *See* cases cited *id.*; Dkt. No. 183 at 47-49; *see also Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935-36 (9th Cir. 2015) (use of plaintiff's mark as keyword search term not infringing where "the resulting page display[ed] several products, all of which [we]re clearly labeled with the product's name and manufacturer"); *cf. Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*, Case No. 17-CV-5807 (SJF) (SIL), 2019 WL 3485700, at *9 (E.D.N.Y. July 2, 2019) (granting summary judgment to defendant on plaintiff's Lanham Act claim—even where, unlike here, defendant "ha[d] admittedly done more than just purchased keywords . . . [and] caus[ed] [plaintiff's] name to be displayed in the headline of the [a]dvertisement"—because the advertisement otherwise "adequately distinguished itself," including insofar as it "was labeled as an 'Ad'," was "segregated from non-sponsored links," and "contained [defendant's] own URL in the text of the link"), *report and recommendation adopted*, 2019 WL 3927367 (E.D.N.Y. Aug. 20, 2019). While the implication is that Jacobs' claim against Fareportal relating to its keyword advertising fails as a matter of law, the Court's Order does not appear to expressly reach that conclusion, referring instead to the "We Go CheapO" television/radio advertisement that was never alleged (much less shown with any plausible evidence, admissible or not) to be tied to Fareportal's decade-long bidding on misspells of its name.

Understanding which activities remain in the case is a significant matter, as Fareportal's "offline" (*e.g.*, television/radio ads) and "online" (*e.g.*, keyword ads) advertising involves very

9

different documents and witnesses, and will have a material impact on the length of the trial.[5] Therefore, Fareportal respectfully requests that the Court clarify whether Jacobs may maintain his claims pertaining to keyword advertising as a matter of law.[6]

### D. Supreme Court Precedent Prohibits Trial on the Validity of CHEAPOAIR® as a Trademark, and Therefore the Court Should Clarify that It Is Not.

The Order opines that CHEAPOAIR® is a descriptive term and that the trier of fact could find that Fareportal's mark is merely descriptive and has not acquired a secondary meaning. *See* Order at 23, 29. However, Jacobs has not raised the argument that Fareportal's CHEAPOAIR® mark is invalid; it is Fareportal who has argued that it can use the term "cheapo" as a play on its own brand name, not that the term is descriptive. Moreover, Fareportal's challenge to Jacobs' mark is not on descriptiveness grounds, but on the grounds that the registration is not supported by continued use in commerce, and that Jacobs' use in the travel space infringes on Fareportal's prior rights in its "CHEAPO"-prefixed marks.

Accordingly, the commentary in the Order regarding descriptiveness raises a new issue that neither party has asserted and therefore potentially expands the scope of trial to require Fareportal to offer evidence of secondary meaning, which may consist of an array of material that

---

[5] Jacobs is aware of this. During the Rule 30(b)(6) depositions, one Fareportal witness was designated to discuss the television/radio advertisement that Fareportal's outside advertising agency created, and another was designated to discuss Fareportal's longstanding search-engine marketing strategy, including bidding on keywords to help potential customers see links to CheapOair.com when they run internet searches for various terms ranging from generic travel-related terms to Fareportal's brand names and misspellings of those brand names.

[6] The Federal Trade Commission has recently weighed in on keyword bidding, taking the issue that even bidding on a competitor's name (to say nothing of a variation of one's own name) is necessary for consumer choice, and thus restrictions on keyword bidding violate antitrust law. *See 1-800 Contacts Inc. v. Federal Trade Commission*, No. 18-3848 (2d Cir.). Therefore, the keyword bidding question has implications well beyond the scope of this proceeding, which may also affect the parties' trial preparation, in addition to drawing attention from the technology community for suggesting that garden-variety keyword advertising is, contrary to what the Court found, actionable under the circumstances of this case. To the extent this issue is no longer in the case, party and court efficiency would be greatly increased for this reason as well.

10

would necessitate the reopening of discovery on liability in this bifurcated case. Moreover, had the issue been raised, Fareportal would have argued that a trier of fact cannot make such a finding because, among other reasons, the law prohibits a finding of descriptiveness as to trademarks that, as here, have achieved incontestable status. *See* 15 U.S.C. §§ 1065; 1115(b); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985) (incontestable trademarks cannot be attacked on descriptiveness grounds); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009) ("Once a mark becomes incontestable, it 'cannot be challenged . . . for mere descriptiveness, or on the basis that the mark lacks secondary meaning.'") (quoting *Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1324 (Fed. Cir. 1999)); *McCarthy on Trademarks and Unfair Competition* § 32:145 (5th ed.) (discussing "bright line rule" that incontestable mark cannot be challenged as merely descriptive).[7] The clarity of this issue is such that Fareportal fears, win or lose, that it may be compelled to appeal on this issue if the Court does not remedy it before trial. This in turn would further lengthen the proceedings, which is contrary to everyone's goals. Therefore, to avoid future confusion about whether the trier of fact can hear evidence pertaining to a legal impossibility, and to avoid leaving potential precedent that might be relied upon in future trademark disputes, Fareportal respectfully requests that the Court strike the portions of the Order pertaining to the validity of Fareportal's trademark registrations.

## **CONCLUSION**

For the foregoing reasons, Fareportal respectfully requests that the Court grant its Motion for Clarification.

---

[7] Under the cited provision, a mark may become generic (as have once-registered brand names like "aspirin," "trampoline," "cellophane," "zipper," and "escalator"), but it can never be challenged as descriptive of the goods or services associated therewith. *See id.*

Respectfully submitted,

Dated: New York, New York
April 15, 2020

/s/ Eleanor M. Lackman
Eleanor M. Lackman, *pro hac vice*
Marissa B. Lewis, *pro hac vice*
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Tel.: (212) 509-3900
Fax: (212) 546-7675
eml@msk.com
mbl@msk.com

Michael T. Hilgers (#24483)
HILGERS GRABEN PLLC
14301 FNB Parkway, Suite 100
Omaha, Nebraska 68154
Tel.: (402) 218-2106
mhilgers@hilgersgraben.com

*Attorneys for Defendant-Counterclaim-Plaintiff Fareportal Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 15, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of same to all CM/ECF participants.

                                                   /s/ Eleanor M. Lackman