IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IAN V. JACOBS,<br><br>       Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>FAREPORTAL INC.,<br><br>       Defendant/Counterclaim-Plaintiff. | Civil Action No. 8:17 Civ. 00362<br><br>**FAREPORTAL INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR CLARIFICATION OF THE COURT'S SEPTEMBER 19, 2019 MEMORANDUM AND ORDER** |

Defendant/counterclaim-plaintiff Fareportal Inc. ("Fareportal"), by and through its undersigned counsel, respectfully submits this reply brief in further support of its motion for clarification (Dkt. No. 246) of the Court's September 19, 2019 Memorandum and Order (Dkt. No. 232) (the "Memorandum and Order" or "Order").

**PRELIMINARY STATEMENT**

Jacobs' lengthy opposition to Fareportal's short motion is a demonstration of the old adage: "If you have the facts, bang on the facts. If you have the law, bang on the law. If you have neither, bang on the table." Preferring to continue to fight everything for the sake of fighting everything, Jacobs misrepresents facts that he knows the Court already knows about the timing of this action— including the large block of time where the "squeeze" of litigation was paused to focus on settlement. Jacobs underscores his errors so deeply that he ends up invalidating his own expert report. He sidesteps Supreme Court precedent entirely. Indeed, instead of addressing the merits, his rhetoric-laden opposition focuses on baselessly upbraiding Fareportal's counsel for following

**FAREPORTAL INC.'S REPLY IN SUPPORT OF ITS MOTION FOR CLARIFICATION**

the Court's instruction to submit the motion if relief was sought. Having previously moved to reconsider the order denying the motion to compel and bifurcating the case (Dkt. No. 119), Jacobs has little cause to be so vexed about a request to clarify.

Jacobs' choice to approach Fareportal's request in this way is revealing and demonstrates a stark distinction between the parties' two approaches. To the extent this lawsuit persists, Fareportal seeks to get to the truth in a way that is as minimally taxing on the Court and the parties as possible: this is the basis for the motion. Jacobs, in contrast, chooses to focus on potshots and hyperbole as a means to distract the Court from Fareportal's well-founded, well-reasoned request. Such an approach is not consistent with how the proceedings were expected to move forward.

As demonstrated in its opening brief and will be further shown below, Fareportal's request is timely, valid, and serves the interests of justice as well as those of the Court. Fareportal therefore respectfully requests that the Court see past the distracting noise to the equitable and justifiable reasons for its motion, and that the Court grant the motion.

## ARGUMENT

**I.  FAREPORTAL'S REQUEST IS TIMELY; JACOBS ASSERTS NO PREJUDICE**

Fareportal put forth binding and persuasive authorities confirming that the Court may review and modify its opinion (including making corrections and addressing omissions) at any time. *See* Moving Br. at 4-5. Jacobs does not contradict those authorities. Rather, Jacobs uses sarcastic quotation marks around the name of Fareportal's motion papers to claim that the motion cannot be a motion for clarification. But attempt at ridicule is no substitute for argument. Fareportal has identified portions of the Memorandum and Order that do not decide a moved-upon

issue, or that seek clarification of specific facets thereof, and Jacobs' failure to put forth argument or law to the contrary renders Fareportal's request unrebutted.[1]

Jacobs focuses his fire on a version of Fareportal's briefly stated alternative argument (Moving Br. at 5-6), which anticipated Jacobs' objections and noted that, in the alternative, the motion is one for reconsideration. While Fareportal disagrees,[2] the dispute is irrelevant: even if the request might be characterized as a reconsideration request, the request was made in a "reasonable time," as the rule requires. Jacobs grounds his sole substantive objection, on timeliness grounds, on the notion that the parties are too far down the road in the damages phase to address the specific, liability-related points. Jacobs is wrong, for two reasons.

*First*, the timing is very prompt under the circumstances. Despite the mischaracterization of the timing Fareportal provided, Jacobs seems to forget that just four days after the Memorandum and Order issued, the parties appeared – with the client representatives – before the Court, which encouraged the parties to turn their focus to seeking a resolution now that the ruling had resolved particular issues. Jacobs assails Fareportal for following the Court's instructions to put down their swords for a period to explore whether the matter can resolve, as a reverse confusion case involving

---

[1] Jacobs hyperbolically claims (Opp. Br. at 2) that Fareportal has gone to "great lengths" to provide foundation for this argument. Fareportal's argument is two paragraphs long. Moving Br. at 4-5.

[2] As Fareportal noted in its moving papers, it is not truly in the nature of a reconsideration request, as Fareportal chiefly focuses on omissions, not "mistakes," as Jacobs repeatedly claims; where there are errors or omissions, Fareportal expressly identifies them in enumerated fashion. These specific issues do not seek to reargue anything that was argued and has been decided. Notably, Jacobs fails to identify in the Memorandum where the false advertising claim was disposed (much less opposed), where the Court looked at the summary judgment standard from the view of Fareportal on the unjust enrichment claim, and so on.

a short-lived television and radio spot should. This claim of delay is not only baseless, it is a disingenuous argument for Jacobs to make.[3]

According to Jacobs, the damages discovery phase began the day after the Memorandum issued. *See* Opp. Br. at 7-8. His actions show otherwise. For example, Jacobs did not serve a single discovery request until March 2, 2020, nearly *six months* after the damages discovery phase allegedly (in Jacobs' stated view) opened. In late February, the Court held a conference to discuss the progress of settlement, even offering two potential magistrate judges who may be available to help. The Court entered a schedule in the mutually shared hope that perhaps *recommencing* discovery might incentivize the parties to wrap the matter up.

Around ten days later, counsel for Jacobs left a voice message for Fareportal's counsel, requesting a lengthy discussion about a potential resolution. Without disclosing the substance,[4] in reliance thereon, Fareportal refrained until the end of the month from raising any issues with the Court. While Jacobs now admits (Opp. Br. at 9) that he was spending all of the intervening time working on litigating, rather than taking the Court's instructions seriously, neither Fareportal nor the Court had such an impression.

*Second*, Jacobs' argument misses the mark entirely, because Fareportal's motion has nothing to do with the damages phase, except for one affirmative defense where Fareportal bears the burden. As a matter of logic, none of the issues raised regarding an Order that is, by its nature,

---

[3] Contrary to what Jacobs says, the Court did not instruct the parties to "immediately begin preparing to address certain aspects of the forthcoming trial, such as whether all or parts of it would be before a bench or jury." Opp. Br. at 8. The Court asked the parties to be prepared to discuss the issue at the conference four days later, and that issue was ultimately put to the wayside because Jacobs claimed he was unable to fully ascertain the nature of relief that he was seeking. As the Court may recall, this led to the streamlined exchange of material prior to entering mediation.

[4] As Your Honor may be the trier of fact, to the extent that the Court wishes to explore the underpinnings of this statement, counsel is available to discuss the matter with the retained mediator or any of the other judges that may be available to hear the issue.

strictly tied to liability has any impact on damages discovery or its progress. Rather, every issue that Fareportal has raised was raised because of the impact on the *scope of trial*. Indeed, Fareportal tied its motion to concerns about witnesses, scope of preparation, and other matters pertaining to trial. Jacobs disputes none of these representations.

Instead, Jacobs baldly claims that Fareportal seeks to reopen the liability phase, but he includes no explanation of how this would be so. If the Court's review of the matter will slow discovery down or otherwise affect anything that will happen between now and the close of damages discovery, some argument should have been provided; in the interest of objectivity, Fareportal has carefully thought through the issues and has come up with no basis either. Even the question of whether Jacobs raised an issue of material fact on keyword advertising will make no difference to damages discovery, as Jacobs' discovery demands (like Jacobs' confusion survey) focus not on the period of keyword advertising, but solely on the 16-month period that the television and radio ad ran. Likewise, Jacobs cannot dispute that the monetary recovery he seeks on his various claims is congruent, not cumulative. Accordingly, the objection is unsupported and should be rejected. And regardless, Jacobs does not seem to want to move ahead expeditiously: contrary to what the Court expressed at the September 19, 2019 conference and contrary to the parties' agreements, Jacobs has pressed for wide-ranging and highly burdensome discovery while evading his obligations to such a great level that motion practice is inevitable. The motion will

likely be decided well before the discovery phase is over, unfortunately.[5]

## II.  JACOBS' ARGUMENTS, IF ANYTHING, CONFIRM THAT THE INTERESTS OF JUSTICE MERIT A REVIEW OF THE DISCRETE ISSUES FAREPORTAL HAS RAISED

Jacobs' distracting bluster fails to cover the absence of any compelling argument to show that the narrow, discrete issues Fareportal has raised should be addressed. That Jacobs ends up tying himself into knots confirms as much. Fareportal will briefly address each topic in turn.

**False Advertising.**  Fareportal explained that false advertising claims and false designation of origin claims are to be considered separately. Moving Br. at 6-7 (citing, *inter alia*, *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)).[6] Jacobs identifies no case where these two causes of action can be blended together and considered together.  Indeed, as Fareportal noted in its summary judgment briefing and in this motion, there is a difference between confusion regarding origin relating from use of a confusingly similar trademark, and a false commercial claim designed to mislead customers into perceiving something about a competitor's product. "Although false advertising is proscribed within the same section of the Lanham Act as trademark

---

[5] The extra time in the schedule came about because Jacobs was interested in knowing whether a request for 3,000 multi-page spreadsheets of varying types was impossible or merely difficult, a question that could not be answered while Fareportal's resources in the relevant business teams, themselves removed from their offices, were being spent dealing with the massive influx of travel cancellations and changes. Several days ago, Fareportal proactively held a meet and confer to encourage Jacobs to narrow the requests. Reply Declaration of Eleanor M. Lackman, dated May 6, 2020 ("Lackman Reply Decl."), at ¶ 3 & n.1. Jacobs held firm on his demand for this volume of information, despite the Court's direction and despite that profits are inappropriate in reverse confusion cases, J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed.) ("[I]n a reverse confusion case . . . , awarding the plaintiff the profits of the infringer is not a proper basis for recovery.") (citation omitted), and Jacobs' own expert has been criticized for his overly broad approach in such cases. *See, e.g.*, *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *20-23 (C.D. Cal. June 8, 2015) (excluding David Drews' expert report on lost profits and unjust enrichment theories, including disgorgement of profits, finding theory to be "speculative as well as misleading and unhelpful").

[6] A false advertising claim under Section 43(a)(1)(B) of the Lanham Act requires:  (1) a false statement of fact in a commercial advertisement, (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience, (3) the deception is material, in that it is likely to influence the purchasing decision, (4) the defendant caused the false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result. *See Clorox Co.*, 140 F.3d at 1180.

infringement, it involves separate elements that require independent analysis, *unlike false designation of origin*, passing off, and unfair competition." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 113 n.69 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) ("These tests [for false advertising and trademark infringement] are distinct, and the district court abused its discretion when it did not separately consider the false advertisement claim.") (citing *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014), *as amended* (Mar. 11, 2014) (alteration in original).[7]

Despite citing *Clorox*, Jacobs misrepresents it, underscoring his own error of blending claims under Section 43(a)(1)(A) and 43(a)(1)(B) of the Lanham Act. Seeking to have it both ways, Jacobs claims that the false designation of origin claim is actually just one of the two possible types of false advertising (*i.e.*, express or implied). In other words, Jacobs says that the "false advertising and designation of origin" claim was a false advertising claim all along, and the reason he identified no express statement was because a "false statement" allegedly is implied. Opp. Br. at 10. Jacobs never made such an argument before, and indeed there is no basis for it—Jacobs never identified any "statement" of any type, which is why Fareportal moved for judgment dismissing the claim. The fact that he tries to identify one now, for the first time, does not change the result. Implied falsity still requires an identifiable message about the services provided. *See Apple Inc. v. Amazon.com Inc.*, 915 F. Supp. 2d 1084, 1090 (N.D. Cal. 2013) ("The mere use of 'Appstore' by Amazon . . . cannot be construed as a representation [concerning] the nature, characteristics, or quality of the Amazon Appstore . . . [and does not] qualif[y] as a false statement under § 43(a) of the Lanham Act."); *see also McCarthy* § 27:9 (noting § 43(a) of the Lanham Act

---

[7] It does not require "numerous pages" (Opp. Br. at 12) to show how off-base Jacobs' response is on such a fundamental topic. Two or so pages will suffice.

codifies two "major and distinct types of 'unfair competition': (1) infringement of . . . unregistered marks, . . . , and (2) 'false advertising'") (citation omitted). No such "statement" is made here.

In any event, the tactic backfires remarkably: in fighting so hard to oppose a well-founded observation that Fareportal made, Jacobs actually ends up jettisoning his confusion-related claims (such as false designation of origin) for the sake of being right on false advertising here. Specifically, Jacobs is aware that false advertising claims based on an implied-statement theory require survey evidence, *see Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1151-52 (8th Cir. 2011), which is why he latches onto the Harper survey—the only survey that was conducted in this case. However, throughout the case and even as confirmed here (Opp. Br. at 11), Jacobs has argued that the Harper survey was a confusion survey about the television/radio ad. Therefore, Jacobs has one of two options: either (1) explain to the Court how the Harper survey was actually a survey to gauge consumer impression about a still-unidentified "statement," and give up using the survey for Jacobs' claims based on confusion theories (infringement, false designation of origin, unfair competition); or (2) admit that the survey was not a false advertising survey and abandon the false advertising claim.[8]

**Unjust Enrichment and Mitigation.** As Fareportal explained, the Order did not

---

[8] The key question for purposes of ascertaining whether an advertisement is false or misleading is: "exactly what message [do] ordinary consumers receive from the ad." *McCarthy* § 27:55. Thus, to be relevant in the context of a false advertising claim, the survey must assess whether "a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992). According to *McCarthy*, a false advertising survey should consist of two parts: "(1) 'Communication' questions that determine what message viewers received and 'filter' out those viewers who received certain messages from those who did not; and (2) 'Comprehension' questions that query those who received a particular message to determine what the viewers thought the message meant." *McCarthy* § 27:55 (quoting *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 134 (3d Cir. 1994)). The Harper survey does not ask these questions and is facially ill-suited for the purported task of assessing false advertising. Rather than ascertain participants' understanding of a particular message, the express purpose of the Harper survey is "to determine if there exists confusion, and if so to what extent, as to the source of [the] 'We Go Cheapo' slogan and 'CheapOAir' name." Dkt. No. 194-2, ¶ 8.

undertake Fareportal's request to dismiss Jacobs' unjust enrichment claim. Likewise, the Court dismissed mitigation as a defense on liability even though the defense was raised only as to damages, a phase that has not yet been completed. *See* Moving Br. at 8 & n.4.[9] Jacobs' only response to Fareportal's clear explanation is to erroneously bootstrap the Court's decision on unfair competition to a phrase included 10 pages later in the Order where the Court talks about *Jacobs'* purported motion for judgment on his unjust enrichment claim. As a result, Jacobs has effectively conceded that the Court did not determine whether *Fareportal* was entitled to judgment dismissing the unjust enrichment claim.

**Keyword Advertising.** Jacobs does not dispute that garden-variety keyword bidding is not infringement. Instead, he says that Fareportal believes it is, citing a declaration in a different case from many years ago. To be sure, the law back then was not as settled as it was now, so Jacobs cannot use the declaration here. *Asa-Brandt, Inc. v. ADM Inv'r Servs., Inc.*, 344 F.3d 738, 745-46 (8th Cir. 2003) (arguments were not inconsistent when they evolved to reflect the state of the law and incorporated developing law). However, the facts were also materially different: unlike here, the defendant in the *LBF* case was using Fareportal's brand names *in the text of the ads*. *Fareportal, Inc. v. LBF Travel, Inc.*, Dkt. 1, Complaint, No. 1:13-cv-02412 (RWS) (S.D.N.Y. 2013), ¶¶ 5, 38 ("Defendants LBF Travel and Globester go far beyond simply purchasing Plaintiffs' Protected Marks as keywords; they also use the Protected Marks and key parts thereof (a) within the headlines, Display URLs, and text of keyword search results advertisements, (b) in

---

[9] Jacobs repeatedly, using double emphases, recites what the Order says. But Fareportal's motion focuses on the Opinion itself. Any modification of the Order would naturally flow from any clarifications made to the Opinion, but to suggest that a motion cannot seek review of the underlying opinion would run counter to all of the cited authorities regarding review of opinions. He also notes that the Order indicated that counsel should be prepared to discuss whether Jacobs' claims should be tried to the court, a jury, or both, but that issue was held primarily in abeyance. Most of the conference, which Jacobs' lead party and local attorneys did not attend, focused on steps to take to try to get to a resolution of the case.

the title and source code of their websites, and/or (c) in infringing subdomain names, all to misleadingly identify LBF Travel's and Globester's own services"). This is a major difference than here, where the term "cheapo" appears only in that "cheapo" contains the first six letters of Fareportal's preexisting brand, CHEAPOAIR®. In other words, none of the results showed the term "cheapo" by itself, and Jacobs has stated that it has no objection to Fareportal's use of its CHEAPOAIR or other CHEAPO- prefixed marks. Thus, as Fareportal explained in its moving papers and its prior briefing, the keyword advertising claim was appropriately dismissed.

**Descriptiveness Arguments Against Incontestable Marks.** The U.S. Supreme Court says that incontestable marks can never be found descriptive. The Court's Order, weighing in on a point that neither party briefed, says that they can. *See* Order, Dkt. No. 232 at 23, 29. Jacobs directly avoids recognizing this precedent. Rather, his only argument, contained in a single paragraph, is that the request should be denied because evidently Fareportal's arguments are insufficiently clear to permit the Court to determine what language would be appropriate to strike in its discretion, as the Court revises the Memorandum and Order in its discretion. Jacobs cites nothing for this proposition because there is no support for it.

### III. JACOBS' *AD HOMINEM* ATTACKS ARE NOT PERSUASIVE ARGUMENT

As the Court has indicated repeatedly over the course of the past three years, there has been a lot of "squeeze" to get to what may not be much "juice." Indeed, some of the squeeze has been too much. Jacobs does not dispute that his opposition to Fareportal's motion for summary judgment was six times as large as Fareportal's moving papers, which was likely a major cause of some of the issues that Fareportal has raised here. And notwithstanding how the Court requested the parties to proceed from the time of the September 19 conference forward, Jacobs now devotes an entire section to attacking counsel for making the motion – and despite, as noted above, that he has moved for reconsideration previously, along with making several other motions that have not

borne fruit. Counsel should be aware that antagonism is not advocacy. *See Advanced Tech. Grp. Inc. v. Sperlonga Data & Analytics Sys. LLC*, No. 3:17-cv-03270, Dkt. No. 190 (N.D. Tex. Feb. 15, 2019) (involving Jacobs' firm; citing *Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 287-88 (N.D. Tex. July 14, 1988)).[10] Such efforts should be rejected, as they have no place here.

Jacobs' final section of the brief is titled "Fareportal's Motion Contains Numerous Misstatements That Must Be Corrected." Yet the only thing Jacobs faults is the characterization of Jacobs' view, on whether this motion should be made, as strong or passionate. Clearly, the vehement nature and tone of the Opposition speaks for itself. Moreover, Jacobs tellingly omits his communication to the Court of March 31, 2020, which shows his strident objections and insinuations as to counsel. For the Court's ease of reference, Fareportal submits it as Exhibit 1 to the accompanying Lackman Reply Decl., which should clear the matter up.

Jacobs likewise insinuates (Opp. Br. at 9 n.3) that there was something improper about referencing that settlement discussions took place—information that is not within Fed. R. Evid. 408 and which the Court already knew about. Yet, ironically, Jacobs discloses (Opp. Br. at 10) that he is focused on profits, overstating a recent Supreme Court decision that simply removes a

---

[10] *Dondi Props.* notes, among other things, that attorneys have the responsibility not to let ill feeling between parties influence a lawyer's conduct toward opposing lawyers; and that "[e]ffective advocacy does not require antagonistic or obnoxious behavior . . . ." 121 F.R.D. at 288 ("Those litigators who persist in viewing themselves solely as combatants, or who perceive that they are retained to win at all costs without regard to fundamental principles of justice, will find that their conduct does not square with the practices we expect of them.").

categorical rule against awarding profits in cases where willfulness has not been proven.[11] Accordingly, not only is Jacobs' glance down his nose unwarranted, Jacobs has revealed far more than Fareportal has regarding this matter.

If Jacobs is going to continue with his hope that he will prove success on the merits and persuade the Court in equity to award non-attributable windfall profits against a party who briefly included a slogan that was a play on the party's house mark, argument and allegations that are not consistent with that goal, as stated in Jacobs' opposition briefing, should be disregarded. Accordingly, Fareportal requests that in addition to granting its motion, the Court disregard any argument – here or elsewhere, by either side – that is not targeted to the merits or the proper disposition of the case.

---

[11] *Romag Fasteners Inc. v. Fossil, Inc.*, No. 18-1233, 2020 WL 1942012, at *4 (U.S. Apr. 23, 2020), a case involving forward confusion, recognized that a categorical rule had developed in some circuits which held that unless a plaintiff proved willfulness, an award of profits was not available. Jacobs' rosy view appears to disregard the observation that the rule reflected a historic trend of courts finding a defendant's mental state as a "highly important" consideration in a court's equitable analysis. Indeed, Justice Sotomayor in her concurrence noted that it would not be "consonant with the 'principles of equity'" referenced in the law to award profits for innocent or good-faith trademark infringement. *Id.* at *5 (Sotomayor, J., concurring); *see also W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005) ("an award of profits under the Lanham Act is truly an extraordinary remedy").

## CONCLUSION

For the foregoing reasons and those stated in its moving papers, Fareportal respectfully requests that the Court grant its Motion for Clarification.

Respectfully submitted,

Dated: Brooklyn, New York
May 6, 2020

/s/ Eleanor M. Lackman
Eleanor M. Lackman, *pro hac vice*
Marissa B. Lewis, *pro hac vice*
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Tel.: (212) 509-3900
Fax: (212) 546-7675
eml@msk.com
mbl@msk.com

Michael T. Hilgers (#24483)
HILGERS GRABEN PLLC
14301 FNB Parkway, Suite 100
Omaha, Nebraska 68154
Tel.: (402) 218-2106
mhilgers@hilgersgraben.com

*Attorneys for Defendant-Counterclaim-Plaintiff Fareportal Inc.*

**CERTIFICATE OF COMPLIANCE**

Counsel of record hereby certifies that this Reply Brief in Further Support of Fareportal Inc.'s Motion for Clarification contains no more than 6,500 words and therefore complies with the word limit set forth in Rule 7.1(d)(1)(B) of the Local Civil Rules of the District of Nebraska. Counsel relies on the word-count function of the word-processing system used to prepare this document, particularly, Microsoft Word 2016, which was applied to include all text, including the caption, headings, footnotes, and quotations. The total number of words in the foregoing Reply Brief, including this Certificate of Compliance, is 4,379.

      /s/ Eleanor M. Lackman
      Eleanor M. Lackman

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of same to all CM/ECF participants.

                                                  /s/ Eleanor M. Lackman
                                                    Eleanor M. Lackman