IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IAN V. JACOBS, § | |
| § | |
| Plaintiff/Counter-Defendant, § | |
| § | |
| v. § | CIVIL ACTION NO. 8:17-CV-00362 |
| § | |
| FAREPORTAL, INC., § | |
| § | |
| Defendant/Counter-Plaintiff. § | |

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DAMAGES DOCUMENTS

Plaintiff/Counter-Defendant Ian V. Jacobs ("Jacobs" or "Plaintiff") files this Reply Brief in Support of his Motion to Compel Damages Documents (the "Motion"). In support of this Reply, Plaintiff states as follows:

## I.
### INTRODUCTION

Fareportal incorrectly asserts that Jacobs is "barred as a matter of law from seeking disgorgement of Fareportal's profits under his reverse confusion theory." Response at 7. This statement is contrary to recent Supreme Court authority and binding Eighth Circuit precedent. Moreover, the Lanham Act exists to deter infringers and to make infringement unprofitable. If Fareportal's argument is accepted, such an outcome would encourage infringement and transform infringement into a business decision for companies to evaluate in connection with a profitability analysis. Thus, Fareportal's argument also runs counter to the purpose of the Lanham Act itself. Finally, Fareportal's request is procedurally improper because Fareportal is seeking dispositive relief precluding an available remedy without filing a motion for summary judgment. Instead, Fareportal seeks dispositive relief in a response to a motion to compel. Therefore, Jacobs' Motion

should be granted, Fareportal should be compelled to produce the requested documents, and Jacobs should be permitted to pursue all available remedies provided by the Lanham Act.[1]

## II.
## ARGUMENTS AND AUTHORITIES

A. **Fareportal's Argument is Contrary to the Plain Language of the Lanham Act and Recent Supreme Court Precedent.**

Fareportal's argument that an award of profits is not permitted in reverse confusion cases runs against the Supreme Court's recent statutory interpretation of the Lanham Act. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S.Ct. 1492 (2020). In *Romag*, the Supreme Court analyzed whether the Lanham Act requires a plaintiff seeking a profits award to prove that the defendant's violation was willful. *Id.* at 1494. Based on the Court's analysis of the plain language of the Lanham Act, the Court rejected the argument that willfulness was a prerequisite to an award of profits. *Id.* at 1497. Although not the precise issue presently before this Court, the Supreme Court's statutory analysis applies equally here. Just as certain circuit courts had incorrectly read a willfulness requirement into the text of the Lanham Act, Fareportal is attempting to read a requirement for forward confusion into the Lanham Act in order for a plaintiff to recover profits.

In *Romag*, the Court began with the plain language of the Lanham Act itself:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established . . .,

---

[1] While Jacobs' Reply focuses on Fareportal's argument that Jacobs is not entitled to disgorgement, the other arguments made by Fareportal in its Response should also be rejected. Fareportal cites no authority to support its position that it did not waive its objection to producing the balance of documents requested based on its prior production of a portion of the subject documents. Instead, Fareportal merely attempts to distinguish Jacobs' on-point authority demonstrating Fareportal's waiver. Similarly, Fareportal's arguments concerning the alleged undue burden of producing these documents falls flat given its prior, partial production of the same documents requested. Again, this information is necessary for Jacobs' expert to complete his analysis. Fareportal's own description of these documents—the "volume, source, and nature of Fareportal's CHEAPOAIR travel bookings and customer inquiries on the particular day or week, along with analytic data such as sales trends and marketing conversion rates" (Response at 11)—demonstrates the importance of this information to Jacobs' damages analysis. While Jacobs' expert may incur many hours reviewing 1,660 spreadsheets, there is no undue burden in producing 1,660 spreadsheets and Fareportal has not presented any evidence of such burden.

> the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

*Id.* at 1494-95 (quoting 15 U.S.C. § 1117(a)). The Court explained that, "immediately," the actual statutory language spelled trouble for Fossil's argument that willfulness was required. Although the statute contained a willfulness requirement as a precondition to a profits award under § 1125(c), the statutory language for other violations "has *never* required a showing of willfulness to win a defendant's profits." *Id.* at 1495. The Court further held that the "subject to the principles of equity" statutory language did not impose a willfulness requirement on the recovery of profits. *Id.* at 1495-96 ("The phrase 'principles of equity' doesn't readily bring to mind a substantive rule about *mens rea* from a discrete domain like trademark law."). The Court concluded with reasoning that applies equally to rebut the statutory interpretation arguments advanced by Fareportal:

> With little to work with in the statute's language, structure, and history, Fossil ultimately rests on an appeal to policy. The company tells us that stouter restraints on profits awards are needed to deter "baseless" trademark suits. Meanwhile, Romag insists that its reading of the statute will promote greater respect for trademarks in the "modern global economy." As these things go, *amici* amplify both sides' policy arguments. Maybe, too, each side has a point. But the place for reconciling competing and incommensurable policy goals like these is before policymakers. ***This Court's limited role is to read and apply the law those policymakers have ordained, and here our task is clear***. The judgment of the court of appeals is vacated.

*Id.* at 1497 (emphasis added).

Here, in the same way, nothing in the Lanham Act's statutory language limits the award of profits to only cases involving forward confusion. Stated differently, there is no language in the Lanham Act that precludes the award of profits in a reverse confusion case. Like Fossil's argument in *Romag*, Fareportal's argument requires this Court to "read into statutes words that aren't there," which the Supreme Court refused to do. *Id.* at 1495. Therefore, because Fareportal's argument runs counter to recent Supreme Court precedent, its argument should be rejected and Jacobs'

requested profits discovery permitted.[2]

### B. Fareportal's Argument is Contrary to Eighth Circuit Precedent.

Fareportal's argument also runs contrary to Eighth Circuit authority. The Eighth Circuit does not draw a distinction between remedies available in forward versus reverse confusion cases. Instead, "[s]ection 1117 makes an award of the infringing party's profits subject only to the principles of equity." *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 473 (8th Cir. 2011). As the *Masters* court explained,

> Disgorgement exists to deter would-be infringers and to safeguard against unjust enrichment. Where the jury disgorges profits to remedy a willful infringement that was likely to cause confusion, to cause mistake, or to deceive as to the relationship between the parties' services, equity does not require adherence to the putative judge-made rule requiring actual confusion.

*Id.* at 473-74. In *Masters*, the appellant, UHS, contended that the district court erred in concluding that the appellee, Masters, was eligible for monetary relief under the Lanham Act, and that the jury's award of $2.4 million based on a disgorgement of profits was improper. The Eighth Circuit rejected this argument and affirmed the lower court's entry of judgment on the jury verdict. As relevant to this dispute, the Eighth Circuit rejected an argument that an injunction, rather than

---

[2] All of the cases cited by Fareportal were decided pre-*Romag* and, as a result, are immediately undercut by the Court's reasoning. Indeed, multiple cases cited by Fareportal run counter to *Romag's* express holding. *See, e.g.*, *Scat Enterp., Inc. v. FCA US LLC*, No. CV 14-7995-R, 2017 WL 5896182, at *1 (C.D. Cal. June 8, 2017) ("To obtain disgorgement of profits under an unjust enrichment theory, Plaintiff must prove that infringement was committed willfully."); *Am. Auto. Assn. of N. Cal., Nev. & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1102 (N.D. Cal. 2019) ("In the Ninth Circuit, a plaintiff seeking disgorgement of a defendant's profits in a trademark infringement case must demonstrate that the defendant willfully infringed the plaintiff's trademarks."); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ("Where trademark infringement is deliberate and willful, this court has found that a remedy no greater than an injunction 'slights' the public."); *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005) ("To that end, we require a showing that Defendant's actions were willful to support and award of profits."); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co.*, No. 14-cv-04853-PSG, 2015 WL 9028123, at *2 (N.D. Cal. Dec. 16, 2015) ("[D]isgorgement if permitted only in those cases where the infringement is willfully calculated to exploit the advantage of an established mark."); *Quia Corp. v. Mattel, Inc.*, No. C 10-1902, 2011 WL 2749576, at *8 (N.D. Cal. July 14, 2011) (denying defendant's request for summary judgment as to plaintiff's claim for defendant's profits based on the evidence raising a fact question of willfulness). Moreover, as this string cite demonstrates, Fareportal's support for its position comes almost entirely from 9th Circuit case law and is not binding on this Court.

monetary relief, should have been the exclusive remedy. Similar to the present dispute, the court reasoned that an injunction "would enjoin activity that appears unlikely ever to occur again and would, therefore, amount to a remedy in name only." *Id.* at 471. Thus, "the Lanham Act contemplates that a disgorgement or accounting of profits may be appropriate to remedy unfair infringement." *Id.* Nowhere in the *Masters* opinion does it limit disgorgement of profits to only cases involving forward confusion. In fact, the court rejected arguments that other limitations should be placed on the award of disgorgement, including rejecting the argument that proof of actual confusion was necessary and that a finding of damages was a precondition to any monetary award. *Id.* at 473-74.

Therefore, not only is Fareportal's argument contrary to Supreme Court precedent, it is also contrary to binding Eighth Circuit precedent. Fareportal's argument should be rejected and Jacobs' Motion granted.

C. **Fareportal's Argument is Contrary to the Purposes of the Lanham Act and Would Encourage Infringement.**

If accepted, Fareportal's argument would also run counter to the express purposes of the Lanham Act and the overall goals of trademark law. Indeed, Fareportal's argument would do nothing to deter future infringing conduct and would actually encourage infringement by permitting larger companies to profit off of smaller competitors by making a business decision to infringe. These outcomes are completely opposite to the Lanham Act's purpose.

"The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 941 (7th Cir. 1992) (quoting *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985)). Stated differently, "the courts have required that the final remedy imposed under section 35(a) provide a sufficient deterrent to ensure that the guilty party will not return to its former ways and once again

pollute the marketplace." *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994). The reason for such goals is clear:

> The award of little more than nominal damages would encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication. Such a method of enforcement would fail to serve as a convincing deterrent to the profit maximizing entrepreneur who engages in trademark piracy. The judicial penalties imposed under such an approach would be simply factored into the infringer's profit and loss statement. If after deducting this "judicial expense" the entrepreneur still earns a suitable return on his investment he will continue the infringing activities.

*Id.* at 1348 (quoting *Playboy Enterp., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982)). The *Sands, Taylor* court posed a simple question to analyze whether the outcome furthered the goal of deterrence under the Lanham Act: "Would a profit-seeking business person not unwilling to violate federal law pay ten cents to make one dollar? If the answer is 'yes,' then the willful trademark infringement has not been made sufficiently unprofitable." *Id.* Accordingly, profits may be awarded under different rationales, including unjust enrichment and deterrence. *Id.*; *Roulo*, 886 F.2d at 941.

In *Sands, Taylor*, the 7th Circuit rejected a substantially similar argument to the one presented in Fareportal's Response. Specifically, the defendant argued that an award of profits was inappropriate because there was "no evidence that Quaker intended to trade on STW's good will or reputation." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992). In rejecting this argument, the court cited the rationale and holding in *Roulo*—that violations of the Lanham Act should be made unprofitable to the infringing party—as "more consistent with the language of the Lanham Act than is the narrower (though perhaps more logical) rule espoused by Quaker." *Id.*

If the goals of the Lanham Act include deterring infringers and making infringement unprofitable, Fareportal's argument accomplishes the exact opposite. The principle manner in

which Fareportal will be deterred from further infringing conduct is to make its infringement unprofitable by awarding Jacobs the ill-gotten profits reaped by Fareportal in running its infringing advertisement. In summary, Fareportal's argument runs counter to Supreme Court authority, Eighth Circuit authority, and the goals of the Lanham Act itself.

### D. Fareportal's Response Seeks Dispositive Relief that is Procedurally Improper.

Finally, in addition to running counter to binding precedent, Fareportal's request to prevent discovery of an available damages remedy in response to a motion to compel is procedurally improper.

All parties agree that the statutory language of the Lanham Act provides that the various options for damages are "subject to the principles of equity." 15 U.S.C. § 1117(a). As demonstrated above, Fareportal's assertion that Jacobs is "barred as a matter of law from seeking disgorgement of Fareportal's profits" is false because it runs counter to Supreme Court, Eighth Circuit, and statutory authority. Because (i) Jacobs is not barred as a matter of law from seeking disgorgement, and (ii) whether Jacobs is entitled to disgorgement is subject to principles of equity, it is procedurally improper for the Court to preclude discovery on an available damages theory in connection with a motion to compel. Indeed, preventing Jacobs from pursuing an available damages theory is equivalent to granting dispositive relief on a damages remedy without having a dispositive motion before the Court. If Fareportal believes that the principles of equity do not permit Jacobs to recover profits as a matter of law, the appropriate procedural mechanism for Fareportal to pursue this relief is through a motion for summary judgment. Because Fareportal has not filed a motion for summary judgment on Jacobs' request for disgorgement, it would be procedurally improper for the Court to preclude discovery on this available remedy.

## III.
### REQUEST FOR RELIEF

Plaintiff requests that the Court enter an Order overruling the objections raised by Defendant Fareportal, Inc. to the requests discussed in this Motion, compelling Defendant to produce all documents responsive to such requests in its possession, custody, or control, and such other and further relief as the Court deems appropriate.

Respectfully submitted,

 /s/ *Joel B. Bailey*
**Jacob B. Kring** (*Pro Hac Vice*)
Texas State Bar No. 24062831
**Joel B. Bailey** (*Pro Hac Vice*)
Texas State Bar No. 24069330

**HEDRICK KRING, PLLC**
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Phone:  (214) 880-9600
Fax:      (214) 481-1844
Jacob@HedrickKring.com
Joel@HedrickKring.com

and

**John P. Passarelli**
Nebraska State Bar No. 16018
**Carol A. Svolos**
Nebraska State Bar No. 24731

**KUTAK ROCK LLP**
1650 Farnam Street
The Omaha Building
Omaha, Nebraska  68102
Phone: (402) 231-8913
Fax:     (402) 346-1148
John.Passarelli@KutakRock.com
Carol.Svolos@KutakRock.com


**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT IAN V. JACOBS**

### CERTIFICATE OF SERVICE

This is to certify that on July 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

        */s/ Joel B. Bailey*
        Joel B. Bailey

### CERTIFICATE OF COMPLIANCE

Counsel of record hereby certifies that this Reply Brief in Support of Jacob's Motion to Compel contains no more than 6,500 words and therefore complies with the word limit set forth in Rule 7.1(d)(1)(B) of the Local Civil Rules of the District of Nebraska. Counsel relies on the word-count function of the word-processing system used to prepare this document, particularly, Microsoft Word, which was applied to include all text, including the caption, headings, footnotes, and quotations. The total number of words in the foregoing Reply, including this Certificate of Compliance is 2,839.

        */s/ Joel B. Bailey*
        Joel B. Bailey