# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IAN V. JACOBS,<br><br>            Plaintiff/Counterclaim-<br>            Defendant,<br><br>      v.<br><br>FAREPORTAL INC.,<br><br>            Defendant/Counterclaim-<br>            Plaintiff. | Civil Action No. 8:17 Civ. 00362 |

**FAREPORTAL INC.'S SUR-REPLY IN RESPONSE
TO PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO COMPEL**

      Jacobs has squandered his final opportunity to show, as he must, that the detailed financial and telephone call reports sought in Request Nos. 83-84 bear even a threshold relevance to any cognizable theory of damages in this case. *Compare E.E.O.C. v. Woodmen of the World Life Ins. Soc.*, No. 09 Civ. 407 (TDT), 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) ("litigants seeking to compel discovery must describe with reasonable specificity[] the information they hope to obtain and its importance to their case") (citation omitted) *with* Dkt. No. 279 (Jacobs' Reply), p. 7 (arguing he is entitled to the requested discovery because it relates to an "available damages theory," particularly, "disgorgement," which he "is not barred as a matter of law from seeking" and may be entitled to recover "subject to the principles of equity").[1] Instead of describing any particular "need" for this information as federal law on discovery requires, Jacobs in his Reply

---

[1] In his Reply, Jacobs focuses on a "disgorgement" of profits, but still does not specifically state whether he is claiming either of the other two conceivable theories of profits-based damages recognized under the Lanham Act; none of these categories of damages are available here *See* Dkt. No. 276 (Fareportal's Opposition), pp. 4-11 (identifying three conceivable profits-based theories, none of which are available to Jacobs in this case).

1

offers a series of newly-crafted textual and policy-based arguments that run contrary to the very authority he cites. He then claims these arguments require this Court to hold—against the heavy weight of authority—that a defendant's profits are potentially recoverable for reverse confusion, and therefore, by implication, the requested documents are relevant and otherwise producible.

All of the arguments in Jacobs' Reply are unavailing,[2] but his self-serving misconstruction of the Supreme Court's recent decision in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S.Ct. 1492 (2020), in particular, necessitates a brief response.

## A.  The Principle of Statutory Construction Underlying *Romag* Is Irrelevant Here.

Jacobs argues that limiting the award of defendant's profits under § 1117(a) to "forward confusion" cases is akin to reading a "willfulness" prerequisite into the Lanham Act, which the Supreme Court declined to do in *Romag*. *See* Reply pp. 2-3. This is not an apt analogy by any credible stretch. *Romag* presented a different question than presented here—whether, under § 1117(a), willful infringement is a prerequisite for an award of an infringer's profits for violation of § 1125(a). The Supreme Court firmly grounded its answer on a basic and specific canon of statutory construction that has no application here. *See Romag*, 140 S.Ct. at 1495-96. In *Romag*, the Supreme Court was obliged to hold that no such "willfulness" prerequisite exists under § 1117(a) because the word "willful" appears "elsewhere in the very same statute," including as a prerequisite to profits for violation of § 1125(c), making its absence for violation of § 1125(a) "all the more telling." *Id.* at 1496; *see also* 15 U.S.C. § 1117(a) (providing remedies for, *inter alia*, "a **violation** under [§] 1125(a) . . . or a **willful violation** under [§] 1125(c)") (emphasis added); *Rodriguez v. U.S.*, 480 U.S. 522, 525 (1987) ("Where Congress includes particular language in

---

[2] Fareportal's Opposition establishes two key points and nothing in Jacobs' Reply undercuts either of them, particularly: Jacobs is not entitled (1) to discover the specific documents requested in Request Nos. 83-84 or (2) to recover any form of profits-based damages under the Lanham Act.

2

one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

This reasoning simply does not apply here, and it is improper to lead the Court to believe it does. The terms "forward confusion" and "reverse confusion" are not (and have never been) included in any provision of the Lanham Act. In fact, when Congress enacted § 1117(a) and enumerated "defendant's profits" as a potential remedy, the judicially-created doctrine of reverse confusion did not even exist. *See* 15 U.S.C. § 1051, *et seq.* (Lanham Act enacted in 1946); *Marketquest Grp., Inc. v. BIC Corp.*, No. 11 Civ. 618, 2018 WL 1756117, at *5 (S.D. Cal. Apr. 12, 2018) (noting "the first case to recognize reverse confusion" was decided in 1977) (citing *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375-76 (10th Cir. 1977)). As the Seventh Circuit has held, the denial of profits in a reverse confusion case is "consistent with the statutory language" in the Lanham Act, § 1117(a). *Fabick, Inc. v. JFTCO, Inc.*, 944 F.3d 649, 659 (7th Cir. 2019) (district court's denial of profits in reverse confusion case "was consistent with the statutory language" in § 1117(a) as "the district court found no evidence (such as bad faith or unjust enrichment) supported an award of profits").

**B.**     ***Romag* Did Not Overturn the Entire Body of Case Law Rejecting Profits in Reverse Confusion Cases.**

Equally baseless is Jacobs' related assertion—which he buries in a footnote (Reply p. 4, n.2)—that *Romag* overturned the entire body of law holding, for myriad equitable reasons, that disgorgement of the defendant's profits is not a proper remedy for reverse confusion. *See, e.g.*, Opp'n pp. 5-8 (collecting cases). While *Romag* construes the applicable provision of the Lanham Act, it says nothing about reverse confusion. *Romag* did not present a case of reverse confusion, and the Supreme Court's various opinions neither referenced, nor cited cases referencing, reverse confusion. *Cf. A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, No. 94 Civ. 7408, 2002

3

WL 27735, at *5 n.6 (E.D. Pa. Jan. 9, 2002) ("reverse [confusion] protects against a very different kind of harm" than forward confusion) (emphasis added and citations omitted).[3]

In any event, *Romag*'s holding—that willfulness is not an "inflexible precondition" but rather "a **highly important consideration** in determining whether an award of profits is appropriate," *Romag*, 140 S.Ct. at 1497 (emphasis added)[4]—is not inconsistent with the reasoning underlying courts' consistent and unwavering denial of profits for reverse confusion. *See, e.g.*, *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1405-06 (9th Cir. 1993) (emphasizing importance of willfulness, but recognizing "an accounting of profits . . . must be granted in light of **equitable considerations**," and finding "policy considerations announced by *Playboy Enterprises* would be trivialized by insisting on an accounting [of profits]" where, *inter alia*, "[plaintiff's] mark was weak," "there was no evidence of actual confusion," and "[defendant's] major position in the [] industry [made] it clear that it was not trading on [plaintiff's] relatively obscure name") (discussing *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272 (9th Cir. 1982), which Jacobs relies on in his Reply p. 6).[5]

---

[3] Generally, "the kind of damages [a] plaintiff is entitled to recover [in a reverse confusion case] are 'devaluation of the trademark through damage to its product identity, corporate identity, control over its goodwill and reputation and its ability to enter new markets.'" McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2020) (citation omitted).

[4] This is echoed in both concurrences. *See id.* ("willfulness is a highly important consideration in awarding profits") (Alito, J., concurring); *id.* at 1498 ("the weight of authority [] indicates that profits were hardly, if ever, awarded for innocent infringement" and such an award "would not be consonant with the 'principles of equity' referenced in § 1117(a)") (Sotomayor, J., concurring).

[5] As set forth in Fareportal's Opposition, there is a consensus among courts nationwide (and reputable trademark treatises) that an award of defendant's profits generally is not a proper remedy for reverse confusion. *See* Opp'n pp. 4-11 (collecting cases); *accord* McCarthy § 30:62 (award of the defendant's profits is "not a proper basis for recovery" for reverse confusion) (citation omitted); 6 Callmann on Unfair Comp., Tr. & Mono. § 23:62 (4th ed.) (an "accounting of profits" as means to compute "plaintiff's actual damages" generally is "inconsistent with reverse confusion").

Jacobs' criticism of Fareportal's citation to cases that are "not binding on this Court" (Reply p. 4, n.2) is misleading. Jacobs' "demonstrative" string cite of primarily Ninth Circuit cases (*id.*) is not

4

Moreover, to confirm the fatal fallacy underlying Jacobs' new argument, even courts falling on the opposite side of the Circuit split resolved by *Romag*—*i.e.*, those who did not believe that willfulness was a prerequisite for a recovery of profits under the same logic as the Supreme Court's position—nonetheless have consistently denied profits in reverse confusion cases. *See, e.g.*, *Fabick*, 944 F.3d at 659 (affirming district court's denial of profits and noting "reverse confusion cases present meager justification for profits awards") (citation omitted); *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, No. 11 Civ. 3684, 2016 WL 3545529, at *26 (D.N.J. June 29, 2016) (noting that "willfulness is not a prerequisite finding for recovery under a theory of disgorgement" and, in light of other equitable considerations, rejecting "the availability of a disgorgement remedy in this [reverse confusion] case"). Under Jacobs' logic, these courts were simultaneously right and wrong about their reading of the statute. To the contrary, on an issue as to which Jacobs identifies not a single "split," the courts carefully distinguish between forward and reverse confusion cases. This Court should not be the single outlier.

Nor are Jacobs' newly-offered policy-based arguments meritorious. Indeed, Jacobs' argument that barring an award of Fareportal's profits is contrary to the "overall goals of trademark law" (Reply p. 5) is belied by his own authorities. The Lanham Act explicitly states that any award "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). Awarding profits for

---

representative of Fareportal's Opposition, which cites decisions from the Eighth Circuit where possible, and otherwise provides a survey of oft-cited cases from varying jurisdictions to show that the courts which have had occasion to opine on the issue generally agree that reverse confusion plaintiffs cannot recover the defendant's profits. *See* Opp'n pp. 4-11 (also citing cases from the First, Second, Third, Seventh, and Tenth Circuits). Tellingly, Jacobs cites a total of two in-circuit trademark cases, both of which are inapposite in salient part. *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 473 (8th Cir. 2011) (disgorging profits for forward confusion based on "unique facts"); *Safco Prod. Co. v. Welcom Prod., Inc.*, 799 F. Supp. 2d 967, 994 (D. Minn. 2011) (refusing to disgorge profits for forward confusion on summary judgment because, even if a Lanham Act violation is proven at trial, "equitable considerations could preclude any Lanham Act remedy").

5

reverse confusion, especially here, where there is a vast difference between the parties' sales (Opp'n p. 10), would do just the opposite. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992) (vacating profits award for reverse confusion because it was "not 'equitable,' [but] rather, it [was] a 'windfall' to the plaintiff"), *on second appeal*, 34 F.3d 1340, 1349 (7th Cir. 1994) (cautioning courts to "remain[] cognizant of the tension" between "mak[ing] violations of the Lanham Act unprofitable to the infringing party" and the "clear[] limitations [in § 1117(a)] on the authority of a court to achieve that purpose through the imposition of monetary awards") (citation omitted); *Otis Clap & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738 (7th Cir. 1985) (monetary relief "must not be so large as to constitute a penalty").

## CONCLUSION

The law is clear, nationwide, that profits-based damages generally are not recoverable in a reverse confusion case. Not only has Jacobs failed to identify a single case departing from this precedent, but he has failed to develop any logical theory as to why such an award would be appropriate here, making the material he seeks on his Motion to Compel fully irrelevant. There is no conceivable reason why Jacobs should need the extensive, highly-sensitive data reports that he now seeks. Jacobs' Motion to Compel should be denied.

Respectfully submitted,

Dated: New York, New York  
July 17, 2020

/s/ Eleanor M. Lackman  
Eleanor M. Lackman, *pro hac vice*  
Marissa B. Lewis, *pro hac vice*  
MITCHELL SILBERBERG & KNUPP LLP  
437 Madison Avenue, 25th Floor  
New York, New York 10022  
Tel.: (212) 509-3900  
Fax: (212) 546-7675  
eml@msk.com  
mbl@msk.com

Michael T. Hilgers (#24483)
HILGERS GRABEN PLLC
14301 FNB Parkway, Suite 100
Omaha, Nebraska 68154
Tel.: (402) 218-2106
mhilgers@hilgersgraben.com

*Attorneys for Defendant-Counterclaim-Plaintiff Fareportal Inc.*